**John S. LUCAS et ux., Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 6907.**

United States Court of Appeals
First Circuit.

Dec. 8, 1967.

Henry C. Harvey, Cleveland, Ohio, with whom Wallace M. Wright and Jones, Day, Cockley & Reavis, Cleveland, Ohio, were on the brief, for petitioners.

Donald A. Statland, Atty. Dept. of Justice, with whom Mitchell Rogovin, Asst. Atty. Gen., and Lee A. Jackson and Har-

old C. Wilkenfeld, Attys., Dept. of Justice, were on the brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The facts in this income tax deduction case were stipulated, and are to be found in the opinion of the Tax Court, 25 CCH Tax Ct. Mem. 1375 (1966). They are long and involved, and to state them fully would serve more to complicate the problem than to aid in its solution. While not disregarding the facts so recited, we believe the issues are fairly presented in terms of a somewhat briefer statement omitting nothing favorable to the taxpayer presently relevant, and adding nothing unfavorable.

In 1920 S delivered stock to Bank, in trust, the income to be payable to his daughter T (taxpayer) for life and on her death the principal to be paid to X, if living, and if not, to S's heirs. The trust contained no power to revoke, amend, or to call for early distributions of principal. In 1926 T established a trust with Bank, from which she was to receive the income, and to which, in addition to her own property, she directed Bank to transfer the then assets of the 1920 trust. Bank acceded. Under the terms of the 1926 trust T was the substantive owner, and could call for distributions of principal. In 1950 she called for and received a distribution of stock and sold it, incurring a capital gain and paying the tax.

In 1957 its counsel advised Bank that the right to make the transfer to the 1926 trust of the assets of the 1920 trust was, at best, dubious. As a result Bank instituted a declaratory action, naming T and X as defendants, to determine whether the 1920 trust should be reconstituted,

and if so, to require the return of all assets traceable thereto, both in the 1926 trust and previously distributed to T. T was not called on to repay any sum on account of income since she was entitled to the income in any event. T defended the lawsuit, and in 1960 settled it. In substantial measure she lost the suit, because the 1920 trust was reconstituted.[1] T was obliged to make restitution of the portion of the 1950 distribution attributable to the 1920 trust assets. Similar restitution was made out of the assets remaining in the 1926 trust, as a result of which T lost her apparent right to call for distributions of the restituted assets as well. The assets, as she presently points out, had increased in value and would have produced capital gains if sold or distributed. In connection with the settlement T paid her counsel fees and the cost of accountants who traced and segregated the assets, plus counsel fees to X and the guardian appointed for S's heirs. She sought, under section 212 of the 1954 Code [2] to deduct from her gross income for 1960 the full amount of these expenses. The Tax Court held she could deduct none, in whole or in part. For present purposes we will not distinguish between them, and will refer to them, generally, as the expenses.

The government claims, and the Tax Court held, that the expenses could not be deducted because all that taxpayer was doing was defending her title, and that defending title is a capital expense, not an income matter. Taxpayer replies that more than this is involved: she incurred the expenses attempting to protect her right not only to capital assets, but to capital gains. She claims that capital gains, realized or unrealized, are "income" within the meaning of section 212.

We start with the understanding that the purpose of section 212, initially

---

1. A partial change in the remaindermen after T's death, apparently wished by T, was her principal solace. Possibly based upon this the government makes an alternate contention that the expenses involved in this case were personal. We do not reach it.

2. "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—(1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *."

and almost identically section 23(a) (2) of the 1939 Code as added by section 121 (a) of the Revenue Act of 1942, ch. 619, 56 Stat. 819, was to play fair with a taxpayer by allowing him to deduct expenses incurred in connection with income-producing but non-business property or ventures, the income from which had long been taxable. However, the purpose was to achieve parity with the treatment afforded to business expenses, not to exceed it.

"The effect of § 23(a) (2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23(a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income." Trust of Bingham v. Commissioner of Internal Revenue, 1945, 325 U.S. 365, 374, 65 S.Ct. 1232, 1237, 89 L.Ed. 1670.

See Lykes v. United States, 1952, 343 U.S. 118, 122 n. 7, 72 S.Ct. 585, 96 L.Ed. 791; United States v. Gilmore, 1963, 372 U.S. 39, 44–45, 83 S.Ct. 623, 9 L.Ed. 2d 570. One type of expense which in connection with business property was always required to be capitalized rather than deducted was acquisition cost, including the perfecting of title. E. g., Farmer v. Commissioner of Internal Revenue, 10 Cir., 1942, 126 F.2d 542; 3 R. Paul & J. Mertens, The Law of Federal Income Taxation 56–57 (1934). No greater liberality was intended with respect to nonbusiness property.

While conceding this principle as "well recognized," taxpayer asserts that it is inapplicable. Specifically, taxpayer points to the fact that the Senate Finance Committee report accompanying the original enactment stated that income includes "gain from the disposition of property." [3] Treasury Regulations § 1.212–1 (b) (1957) repeats significant parts of the Senate reports.[4] What taxpayer loses sight of is the fact that this language and the language of the statute must be read in their totality.

■ We discuss first the expenses incurred in connection with the shares remaining in the 1926 trust. Subsection two of section 212 refers to "property held for the production of income." The income may be past or future income and may be capital gain, but there is a corresponding limitation: deductible expenses must be for the "management, conservation, or maintenance" of the property, not for its acquisition or improvement. Expenses of the latter sort are taken into account at the same time and reduced rate as the ultimate gain they are intended to produce, just as they would be under the law governing business deductions. The claim of the 1920 trust, which taxpayer was trying to defeat so that the assets previously transferred therefrom would remain subject to her call in the 1926 trust, was a cloud on her title. Her assertion that she was "protecting" the property was inexact.

3. "For an expense to be deductible under this section, it must have been incurred either (1) for the production or collection of income, or (2) for the management, conservation or maintenance of property held for the production of income. Ordinary and necessary expenses so paid or incurred are deductible under section 23(a) (2) even though they are not paid or incurred for the production or collection of income of the taxable year or for the management, conservation, or maintenance of property held for the production of such income. The term 'income' for this purpose comprehends not merely income of the taxable year but also income which the taxpayer has realized in a prior taxable year or may realize in subsequent taxable years, and is not confined to recurring income but applies as well to gain from the disposition of property. * * *" S.Rep. 1631, 77th Cong., 2d Sess., 1942–2 Cum. Bull. 504, 571. The House report was of like tenor. H.R.Rep. 2333, 77th Cong., 1st Sess., 1942–2 Cum.Bull. 372, 430.

4. The government ignores this material and, except for a footnote misstating taxpayer's entire position, ignores taxpayer's court authorities as well. We believe we are entitled to less struthious behavior.

Protection of the physical property would be included but not protecting title. "Expenses paid or incurred in defending or perfecting title to property * * * constitute a part of the cost of the property and are not deductible expenses." Treas. Reg. § 1.212–1(k) (1957). E. g., Estate of Joseph P. Morgan, 1961, 37 T.C. 31, aff'd as to this issue, 5 Cir., 1964, 332 F.2d 144; Bowers v. Lumpkin, 4 Cir., 1944, 140 F.2d 927, cert. denied 322 U.S. 755, 64 S.Ct. 1266, 88 L.Ed. 1585.

This did not cease to be so by reason of the fact that at the time the expenses were incurred the value of the property exceeded its costs. The property is a single, indivisible unit, the title is one and the same, and taxpayer was not engaged in two activities, one deductible and one not, simply because, for tax purposes, some subsequent taxable transaction would be measured by deducting from the gross receipts whatever might be its cost base. In a sense any capital-directed activity may "affect" income, but that is not the test. See Brown v. Commissioner of Internal Revenue, 5 Cir., 1954, 215 F. 2d 697, 699–700.

■ Nor is taxpayer in any better position under subsection one. Even though the subsequent receipt of capital gains would be income, an attempt to cement title to the property which would produce the income is not "production or collection of income," but, precisely, a capital expense. If taxpayer's interpretation of subsection one were correct, and any attempt to obtain or retain property which would produce a capital gain were a "collection" of income, there would be a clear conflict with subsection two. If subsection one is not to render subsection two and its limitations superfluous it must be read to exclude expenses which are directed to the acquisition of income via the medium of held property.[5]

Although it may be less readily apparent, this analysis applies equally to the 1950 distribution, the direct return of which taxpayer was resisting. Again, the dispute was whether taxpayer had the title to the distribution as a unit, and hence neither subsection applies. Cases relied on by her such as William A. Falls, 1946, 7 T.C. 66, are not in point. In *Falls* the taxpayer was named as a defendant in a suit to recover possession of patents, allegedly obtained by him by fraud, and to recover the royalties which taxpayer had been receiving from the licensee. Taxpayer was successful in resisting the suit, and sought to deduct his legal fees and expenses. Held, that he could deduct a portion, prorated between the value of the past royalty income he was defending, and the value of the patents, a capital asset. As to the latter his costs were a capital expense; as to the former, they were income expense. In the case at bar there was nothing received but capital assets. The fact that taxpayer was trying to support past receipts rather than a present claim cannot alter the principles involved.

It is true that in this aspect of the case taxpayer has a case in her favor. In Agnes Pyne Coke, 1951, 17 T.C. 403, taxpayer sued her former husband to recover alleged community property. In 1945 she won the suit, receiving shares of stock which were sold forthwith at a substantial long term gain. She sought to deduct her litigation costs from her gross income. The Commissioner claimed, as in the case at bar, that taxpayer was merely requiring capital assets, contending that the expenses should go to increase the cost basis. The court, however, citing its earlier decision in William A. Falls, supra, for the proposition that proration was appropriate, divided the expenses, allowing a full deduction for the portion attributable to the capital gain as contrasted to the cost base. This decision was affirmed on the Tax Court's opinion. Commissioner v. Coke, 5 Cir., 1953, 201 F.2d 742.

5. Whether this exclusion embraces every expense whose return will be taxed entirely at capital gains rates we need not now decide. See, e.g., Commissioner of Internal Revenue v. Doering, 2 Cir., 1964, 335 F.2d 738.

We can only repeat that the decision in *Coke* gives the word "income" as used in section 212(1) a meaning which would upset the parity sought to be achieved with business property expenses. The Tax Court's reference to the fact that the taxpayer had had to pay an income tax on the capital gains neglected the fact that every realized capital gain involves an income tax, and therefore can be no basis for distinguishing between what is a deduction and what a capital expense.

We may note that *Coke* has not received universal favor, indeed, not any so far as this aspect is concerned. Munson v. McGinnes, 3 Cir., 1960, 283 F.2d 333, 337, cert. denied 364 U.S. 880, 81 S. Ct. 171, 5 L.Ed.2d 103; see Spangler v. Commissioner, 9 Cir., 1963, 323 F.2d 913, 921 n. 22. It is now, albeit *sub silentio*, overruled by the Tax Court. We understand how taxpayer would wish us to think that things go better with *Coke*, but we concur in the Tax Court's present position.

As a separate point taxpayer claims certain identified expenses which it was agreed were for services, legal and accounting, rendered in apportioning the assets as between the two trusts. Taxpayer contends that these expenses were incurred in the conservation of assets which were "indisputably hers." This begs the question. The issue was what was hers. We may concede that if, for example, taxpayer's personal goods by some accident became commingled with those of another, the cost of separation would be a conservation, and hence deductible expense. In the case at bar the expense-producing event was the attack on taxpayer's title and her claim to the 1926 trust assets as a whole.[6] We agree with a statement in taxpayer's brief made in another connection, "[T]he method of settling a dispute does not determine the deductibility of its expenses under Section 212. This depends exclusively upon the origin and nature of the controversy and its subject matter." To restate this in terms of the present question, we do not think taxpayer may treat segregation expenses separately from the principal issue of title. Cf. United States v. Gilmore, supra, 372 U.S. at 51, 83 S.Ct. 623.

The decision of the Tax Court is affirmed.

---

6. The burden of segregating innocent assets was concededly on taxpayer.