Prentiss M. BROWN, Jr., and Margaret D. Brown, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 75–1364.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1975.

Decided Dec. 9, 1975.

Ralph B. Guy, Jr., U. S. Atty., Samuel J. Behringer, Jr., Asst. U. S. Atty., Detroit, Mich., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Ernest J. Brown, Richard Farber, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant

Edward B. Harrison, Fischer, Sprague, Franklin & Ford, Detroit, Mich., for plaintiffs-appellees.

Before PHILLIPS, Chief Judge, MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals, and LIVELY, Circuit Judge.

LIVELY, Circuit Judge.

This case is concerned with the deductibility of legal fees and expenses incurred and paid by a taxpayer who brought a derivative action as a shareholder of a close corporation. Margaret D. Brown (taxpayer) and her sister first consulted attorneys concerning their interests in a family business (Dolese Brothers) after receiving an offer from their brother, Roger Dolese, for purchase of their stock in the corporation in August 1955. Taxpayer was disturbed by some of the statements contained in the offer, particularly the statement that Dolese Company was wholly owned by Roger. Dolese Company had been formed as a separate corporation in 1946, avowedly for the purpose of enabling Dolese Brothers to purchase the stock held by another branch of the Dolese family. Counsel was initially retained to advise on ". . . the overall advisability of accepting Roger's offer" to purchase, and the status of Dolese Company was discussed at the first meeting with taxpayer's attorneys.

Following an investigation, taxpayer and her sister were advised by their attorneys that the transactions carried out by Roger Dolese in 1946 by which the newly formed Dolese Company acquired some of the most valuable assets and the most lucrative operations of Dolese Brothers were a fraud upon their rights as shareholders of Dolese Brothers. Upon the refusal of Roger Dolese to disclose any information about the assets or earnings of Dolese Company, taxpayer and her sister instituted a shareholder's derivative action in the Chancery Court of New Castle County, Delaware, the legal domicile of both corporations. A motion to dismiss the action was denied, and the Supreme Court of Delaware affirmed.

While the case was pending in the Supreme Court of Delaware settlement discussions were initiated by the attorneys for Roger Dolese. The outcome of the negotiations was a settlement by which taxpayer. and her sister disposed of their stock in exchange for debentures of Dolese Brothers at a value eighty percent above the offer in the 1955 letter from Roger Dolese. In addition taxpayer's annual income from her investment in Dolese Brothers was increased from $10,000 to $86,400 and she and her sister were guaranteed two seats on the board of directors as long as they held the debentures. The settlement agreement also provided for the payment by Dolese Brothers of ". . . the attorney fees and disbursements of the plaintiffs incurred by them and their attorneys in said Civil Action No. 989 in the Court of Chancery in the State of Delaware . . . in the aggregate amount of $100,000.00."

When all conditions of the settlement had been satisfied in 1962 taxpayer paid her attorneys $54,910.65 for legal service rendered to her during the preceding seven years. On their income tax return for 1962 taxpayer and her husband (who is a plaintiff because a joint return was filed) reported a capital gain on the sale of the stock, but deducted the legal fees from ordinary income as being incurred and ". . . paid for the production or collection of income and for the management, conservation and maintenance of property held for the production of income." The deduction was disallowed, an additional assessment was paid under protest and this action for refund was filed. Taxpayer also filed claims for refund of taxes based on smaller amounts of legal fees she had paid in 1959, 1960 and 1961.

Following some discovery each party moved for summary judgment. These motions were overruled by District Judge Theodore Levin in a reported opinion and order, *Brown v. United States*, 312 F.Supp. 286 (E.D.Mich.1970).

---

* The Honorable Howard T. Markey, sitting by designation.

There was no appeal from Judge Levin's order or the findings and conclusions set out in the opinion, which also contains a detailed statement of the facts. After ruling against the government on two of its asserted bases for summary judgment, the district court held that the remaining issue involved factual determinations and that summary judgment was not proper at that time. The district court defined the legal issue as whether the legal expenses were incurred in the production of income or for the management, conservation or maintenance of income-producing property, as claimed by the taxpayer; or were incurred as an incident to the sale of stock, as claimed by the government.

Thereafter the parties entered into a lengthy stipulation, referred to herein, which resolved all factual issues. On the basis of the stipulation and other evidence in the case, including depositions of the taxpayer and one of her attorneys, the district court granted judgment to the taxpayer for the full amount of the refund sought with interest. District Judge Robert E. DeMascio, to whom the case was reassigned following the death of Judge Levin, filed an unreported memorandum opinion with the judgment. His ultimate conclusion was that the origin of the claim litigated by the taxpayer in which the legal expenses were incurred was the conservation of income-producing property and that she had satisfied all requirements of Section 212 of the Internal Revenue Code of 1954, 26 U.S.C. § 212, for deduction of such expenses. This conclusion was based upon the finding that taxpayer's claim ". . . originated in the 1946 transaction that resulted in the transfer of income-producing assets from [Dolese] Brothers to Dolese [Company]."

The district court relied principally upon the opinion of the Supreme Court in *Woodward v. Commissioner of Internal Revenue*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970). There a minority stockholder was outvoted on a proposal to extend perpetually the life of a corporation. Under controlling state law those shareholders voting for the proposal were required to purchase the stock voted against the proposal "at its real value." When negotiations for the sale of the stock failed to produce an agreement on its value, the majority stockholders brought an action in the state court to appraise the value of the minority stock interest. The minority stock interest was eventually purchased at the price fixed by the court and the majority shareholders sought to deduct attorneys', accountants' and appraisers' fees paid in connection with the appraisal litigation. The Tax Court and the Eighth Circuit held that the expenses were not deductible, and the Supreme Court granted certiorari ". . . to resolve the conflict over the deductibility of the costs of appraisal proceedings . . ." between two courts of appeals. *Id.* at 574, 90 S.Ct. at 1304.

In affirming the holding of the lower courts in *Woodward* the Supreme Court pointed out that capital expenditures have never been deductible under our income tax and ". . . as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures." *Id.* at 575, 90 S.Ct. at 1305. Noting that the courts have recognized the deductibility of litigation expenses where the primary purpose of incurring them has been found not to be related to defending or protecting title to property, the Court stated that the "primary purpose" test is not valid where the question to be decided is whether the expenses are part of the cost of acquisition of property. Turning to Treas.Reg. on Income Tax § 1.263(a)–2(a) the Court noted that it provides in general terms that "[t]he cost of acquisition . . . of . . . property having a useful life beyond the taxable year" is a capital expenditure. In determining whether the appraisal situation in *Woodward* came within this language the Court relied, not upon the "primary purpose" test, but on ". . . the simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself." *Id.* at 577, 90 S.Ct. at

1306. The Court then concluded that the origin of the claim litigated in the appraisal proceedings was clearly in the process of acquiring the minority stock interest. Since this was so, it was immaterial that the only issue in the litigation was the value of the stock.

The Court noted that it had recently applied the "origin of the claim" test without regard to ". . . the consequences of the litigation . . ." or ". . . the taxpayer's motives or purposes in undertaking defense of the litigation . . ." in *United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). *Id.* at 578, 90 S.Ct. 1302. In *United States v. Hilton Hotels Corp.*, 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970), the Supreme Court held that litigation expenses incurred in an appraisal proceeding were non-deductible regardless of whether title to the property passes before or after its value is determined. In *Third National Bank in Nashville v. United States*, 427 F.2d 343 (1970), this court held that the origin of the claim test applies to costs incurred in the disposition as well as the acquisition of capital assets.

The Court in *Woodward* recognized the possibility of ". . . borderline cases, in which it is difficult to determine whether the origin of particular litigation lies in the process of acquisition." 397 U.S. at 578, 90 S.Ct. at 1306. We believe this is such a borderline case. Looked at from one point of view the expenses which the taxpayer seeks to deduct were incurred in legal proceedings which had their origin in the offer of Roger Dolese to purchase taxpayer's stock in Dolese Brothers. On the other hand, it can be argued that the offer merely triggered an inquiry into the 1946 transactions and that the true origin of the claim litigated was the necessity to expose the facts concerning those transactions in order to conserve the value of taxpayer's stock.

Since all tax deductions are statutory we look first to the language of Section 212 of the Internal Revenue Code of 1954, relied upon by the taxpayer as the basis for claiming the deduction. Section 212 provides—

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

As the government concedes in its reply brief, taxpayer's expenditures related to income-producing property. The question is whether they should be capitalized or deducted. Prior to the enactment of the predecessor to Section 212 a person was not entitled to deduct expenses incurred in connection with income-producing nonbusiness property. The purpose of the provisions now contained in Section 212 was to create a parity of treatment between such nonbusiness expenses and similar business expenses which had long been deductible. *Trust of Bingham v. Commissioner of Internal Revenue*, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945); *Lucas v. Commissioner of Internal Revenue*, 388 F.2d 472, 473–74 (1st Cir. 1967). As the court pointed out in *Lucas, supra*, "[o]ne type of expense which in connection with business property was always required to be capitalized rather than deducted was acquisition cost, . . ." and "[n]o greater liberality was intended with respect to nonbusiness property." *Id.* at 474.

It was stipulated that taxpayer first employed legal counsel to advise her on the ". . . overall advisability of accepting . . ." her brother's offer to buy her stock. After investigation, her counsel advised taxpayer ". . . that any transaction contemplating the sale of stock in Dolese Bros. Co. should include recognition of an interest in The Dolese Co. . . ." When Roger Dolese

refused to divulge information related to the assets and earnings of Dolese Company litigation was begun. It seems to us that regardless of the legal theory adopted by taxpayer in the Delaware Chancery Court or the particular relief prayed for in her complaint, the origin of that litigation lay in taxpayer's efforts to determine the value of her stock in Dolese Brothers in order to respond to her brother's offer to purchase the stock. The conservation of the value of taxpayer's stock was doubtless the immediate purpose of the Delaware action, but the test of deductibility relates to origin rather than purpose. *Woodward, supra,* at 577, 90 S.Ct. 1302. Thus the expenditures for legal fees and expenses were part of the cost of disposition of that stock. As such, these expenses should properly have been applied to reduce taxpayer's capital gain rather than being deducted from ordinary income.

Taxpayer argues that the great increase in income from her Dolese Brothers investment as a result of the Delaware settlement was more important than the increase in sale price over Roger Dolese's offer. Thus it is contended that the expenses were incurred "for the production or collection of income." I.R.C. § 212(1). Though this was a significant result of the litigation, there is no evidence in the record that the origin of any of taxpayer's actions with respect to Dolese Brothers lay in a concern to increase her income.

The judgment of the district court is reversed and the case is remanded for entry of judgment denying the claim for refund.