2. *Theories Advanced On Appeal From Grant of Motion for Summary Judgment.*

As noted above, plaintiff attempts to advance three theories to support his position that he had a property interest in continued employment. Only one of those theories, however, was advanced before the district court. It is fundamental that "parties cannot ... advance new theories or raise new issues in order to secure a reversal of the lower court's" grant of summary judgment. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, at 651-54 (2d ed. 1983) (footnotes omitted). Moreover, the general rule is that this court will not consider issues not raised in the district court. *See e.g., Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 217 (6th Cir.1985) (per curiam); *Sigmon Fuel Co. v. TVA*, 754 F.2d 162, 164-65 (6th Cir.1985).

As explained above, we are unable to conclude that the district court erred in holding that no property interest in continued employment was created by the Morehead Code of Ordinances.

### III.

In summary, we hold that only one of plaintiff's theories for recovery is properly before this court. Since we find no error in the district court's conclusion on that theo-

ry, the judgment of the district court is AFFIRMED.

John K. JOHNSEN; Frances Johnsen, Petitioners-Appellees, Cross-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant, Cross-Appellee.

Nos. 85–1285, 85–1542.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted May 9, 1986.

Decided July 11, 1986.

**1158**

Michael L. Paup, Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Washington, D.C., Ann Belanger Durney, argued, Steven I. Frahm, for respondent-appellant, cross-appellee.

Donald J. Forman, Ginsberg & Forman, Dallas, Tex., Donald W. Geerhart, Grossman & Flask, P.C., Washington, D.C., for petitioners-appellees, cross-appellants.

Before KENNEDY and MILBURN, Circuit Judges, and JOINER, Senior District Judge *.

* The Honorable Charles W. Joiner, Senior District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

MILBURN, Circuit Judge.

John K. Johnsen ("taxpayer") and Frances Johnsen instituted this action in the United States Tax Court to challenge a determination by the Commissioner of Internal Revenue ("the Commissioner") that they owe additional taxes of $3,700.00 for the year 1976.[1] The issue before the Tax Court was the deductibility of taxpayer's distributive share of pre-opening expenses incurred in 1976 by a limited partnership formed for the purpose of constructing and operating an apartment complex.

The Tax Court determined that the limited partnership was not engaged in the active conduct of a trade or business until 1977 when the apartments were rented out and refused to permit taxpayer to deduct his share of the limited partnership's expenses as a trade or business expense under 26 U.S.C. § 162(a). Although denying business expense deductions, the Tax Court concluded that the pre-opening expenses were deductible, for the most part, under 26 U.S.C. § 212, which contains no trade or business requirement. The Tax Court then adjusted the taxpayer's share of the limited partnership's losses to reflect that portion of the year during which he held an interest in the limited partnership.

The Commissioner appealed arguing that the expenses were not deductible under 26 U.S.C. § 212, and the taxpayer cross-appealed arguing that the Tax Court's adjustment of his share of pro rata losses was improper. For the reasons that follow, we reverse and hold that the limited partnership's pre-opening expenses are not currently deductible under 26 U.S.C. § 212.

**I.**

The facts are carefully set out in the opinion of the Tax Court, 83 T.C. 103 (1984), and will only briefly be set forth here. On April 11, 1976, Charles W. Greener, Allan R. Summer, and others formed Centre Square III, a general partnership.

1. Frances Johnsen is a party solely because she filed a joint income tax return with John K. Johnsen for 1976.

On the same date, Centre Square III, Ltd., a limited partnership, was formed. The general partners of the limited partnership were Norman L. Nelson, Jr., Greener and Sumner Architects, Inc., and Equity Advisers, Inc. The original limited partner of the limited partnership was Dee W. Dilts, who was Mr. Nelson's law partner. The parties to the limited partnership agreement intended Mr. Dilts to be a "nominee" who would have no interest in Centre Square III and who would withdraw when new limited partners were admitted. By an amended limited partnership agreement, effective September 9, 1976, Dilts withdrew as the original limited partner and was replaced by twenty-two other limited partners, including taxpayer.

On April 11, 1976, the general partnership agreed to sell its entire interest in the apartment complex project, including land, plans, specifications, and any contracts relating to the project to the limited partnership for $3,171,200.00. On the same date, the limited partnership entered into a management agreement with the general partnership. Under the terms of the agreement, the general partnership was granted total responsibility for leasing, management, and administration of the project. In exchange for its services, the general partnership would receive management and guaranty fees in the amount of 5 percent of the project's gross receipts and an additional $50,000.00 annually in the years 1976 through 1980.

On April 15, 1976, the general partnership agreed to provide the limited partnership construction financing in the amount of $3,171,200.00 in exchange for a $28,200.00 nonrefundable commitment fee to be paid by the limited partnership upon acceptance of the commitment. The general partnership also agreed to provide the limited partnership permanent financing in the amount of $3,171,200.00 in exchange for an $84,600.00 nonrefundable commitment fee to be paid by the limited partnership upon acceptance of the commitment. In August, 1976, the general partnership extended its permanent loan commitment until August

31, 1977, in return for a fee in the amount of $11,280.00.

Construction of the apartment complex began in September, 1976 and was completed in October, 1977. During 1976, the general partnership sought prospective tenants for the complex, but did not accept any rental deposits or advances during that year. Rental deposits on uncompleted units were accepted from prospective tenants beginning in January, 1977.

The offering memorandum for the limited partnership, dated April 15, 1976, provided that the 99 per cent interest belonging to the limited partners would be divided into twenty units of 4.9 per cent each. Each unit cost $47,000.00, payable in five equal installments. The first installment was due upon the limited partner's admission, and the remaining installments were due annually thereafter. On July 19, 1976, taxpayer executed the amended limited partnership agreement and drew a check for $9,400.00 in payment of his first installment.

On its 1976 United States partnership return, the limited partnership deducted $37,500.00 for "tax advisory fees," $7,500.00 for "legal fees," $50,000.00 for the "management and guaranty fees," and $66,427.00 for the "amortization of commitment fees." The limited partnership amortized the commitment fees over the duration of the commitments. The amount deducted included $15,667.00 of the construction loan fee and $50,760.00 of the permanent loan fee. The limited partnership listed the taxpayer's share of the partnership's resulting ordinary loss for 1976 as $9,568.00.

In the notice of deficiency, the Commissioner disallowed the limited partnership's deductions for legal fees, tax advisory fees, commitment fees, and management and guaranty fees. The Commissioner determined that the taxpayer had failed to show that the limited partnership was engaged in a trade or business as of December 31, 1976. The Commissioner further determined that the taxpayer had failed to show that the claimed expenses were ordinary

and necessary within the meaning of 26 U.S.C. § 162(a) and that the expenses were not capital in nature. Finally, the Commissioner determined that taxpayer had failed to show that deductibility of the expenses was not prohibited by 26 U.S.C. § 709 and that the expenses did not represent non-deductible organizational or syndication expenses of the partnership.

The Tax Court determined that the limited partnership was not actively engaged in a trade or business in 1976 because its intended activity of operating a rental apartment complex had not commenced at that time. Consequently, no deduction for trade or business expenses under section 162(a) was permitted. However, relying on its previous decision in *Hoopengarner v. Commissioner*, 80 T.C. 538, 540 (1983), the Tax Court held that the management and guaranty fee, the construction loan commitment fee, a portion of the permanent loan commitment fee, and the permanent loan commitment extension fee claimed by the limited partnership in 1976 were deductible under 26 U.S.C. § 212. The Tax Court disallowed the claimed deductions for legal fees and consulting and advisory fees, holding that they were incurred to organize the partnership and were not shown to be attributable to deductible tax advice. Finally, the Tax Court determined that the taxpayer's distributive share of the limited partnership's deductions must be adjusted to reflect that he was a partner for only a portion of the limited partnership's taxable year.

The parties submitted conflicting computations of taxpayer's liability, disagreeing over the adjustment necessary to reflect taxpayer's entry into the limited partnership after its tax year had begun. The Tax Court adopted the Commissioner's computation and entered its decision on November 21, 1984, determining that taxpayer owed additional taxes of $2,698.00. Taxpayer filed a motion to vacate the Tax Court's decision, contending that the court should not have adopted the Commissioner's computation adjusting his distributive share on the basis of the percentage of days in the limited partnership's taxable year during which he was a partner. Instead, according to taxpayer, the Tax Court should have imposed on the Commissioner the burden of proving that any of the deductible fees accrued prior to his becoming a partner on July 19, 1976. After holding a hearing on taxpayer's motion, the Tax Court issued a supplemental opinion upholding its earlier decision.

## II.

The issue presented by the Commissioner's appeal is whether expenses incurred during the start-up or pre-opening period of a new business, which are not deductible under 26 U.S.C. § 162(a) because of the "pre-opening expense doctrine," are nevertheless deductible under 26 U.S.C. § 212. Section 162(a) provides that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Courts have consistently held that section 162(a) does not permit current deductions for start-up or pre-opening expenses incurred by taxpayers prior to beginning business operations. *See Aboussie v. United States*, 779 F.2d 424, 428 (8th Cir.1985); *Central Texas Savings & Loan Association v. United States*, 731 F.2d 1181, 1183 (5th Cir.1984); *Bennett Paper Corp. v. Commissioner*, 699 F.2d 450, 452 (8th Cir.1983); *Madison Gas & Electric Co. v. Commissioner*, 633 F.2d 512, 517 (7th Cir.1980); *Richmond Television Corp. v. United States*, 345 F.2d 901, 907 (4th Cir.), *vacated on other grounds*, 382 U.S. 68, 86 S.Ct. 233, 15 L.Ed.2d 143 (1965) (per curiam).

Courts denying deductions on the basis of the "pre-opening expense doctrine" have articulated two alternative rationales in support of the doctrine. In *Richmond Television Corp.*, the seminal "pre-opening expense doctrine" decision, the court held that expenses for the training of staff incurred before the taxpayer was licensed to operate a broadcasting business were not currently deductible under 26 U.S.C. § 162(a). The court reasoned that a tax-

payer is not " 'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized." 345 F.2d at 907. Similarly, in *Aboussie,* the court held that a mortgage insurance premium paid to the FHA in order to secure financing for an apartment complex was a nondeductible pre-opening expense. The court determined that the taxpayer was not carrying on any trade or business at the time the expense was incurred and, therefore, was not entitled to a deduction under section 162(a). 779 F.2d at 428.[2]

In *Richmond v. Television Corp.,* the court articulated an alternative rationale for its decision, reasoning that expenses incurred during the start-up or pre-opening period of a new business are not ordinary business expenses but capital expenditures. "Our system of income taxation attempts to match income and expenses of the taxable year so as to tax only net income. A taxpayer may, therefore, not deduct as a current business expense the full cost of acquiring [a capital] asset...." 345 F.2d at 907. The court implicitly recognized that pre-opening expenses must be treated as capital in order to maintain parity with a taxpayer whose cost of purchasing an existing business is clearly capital. *Id.*

Later decisions have applied the "pre-opening expense doctrine" without sole reliance on the "carrying on any trade or business" language in 26 U.S.C. § 162(a). In *Madison Gas & Electric* the court held that expenses incurred by a public utility in expansion of its generating capacity through the joint construction and operation of a nuclear plant with two other utilities were nondeductible pre-opening expenses of the partnership venture. 633 F.2d at 517. The court did not rely solely on the "carrying on any trade or business" language of section 162(a), but treated the start-up costs as capital expenditures under

general tax law standards. *Id.* Similarly, in *Central Texas Savings & Loan Association* the court held that expenditures incurred in starting up new branch offices were capital expenditures. 731 F.2d at 1185. Likewise, the court did not rely solely on the "carrying on any trade or business" language of 26 U.S.C. § 162(a), but reasoned that the expenses were capital because they were incurred in connection with the acquisition of a capital asset. *Id.*

Prior to *Hoopengarner,* the Tax Court held that expenses incurred during the pre-opening phase of a new business were not deductible under 26 U.S.C. § 212. *Graybeal v. Commissioner,* 39 T.C.M. (CCH) 734 (1979). *See also Swigart v. Commissioner,* 39 T.C.M. (CCH) 734 (1980). In *Graybeal* the Tax Court held that expenses incurred in the development of an RV campground were not deductible under either 26 U.S.C. § 162(a) or 26 U.S.C. § 212. The Tax Court reasoned that expenses incurred in anticipation of engaging in a business are capital expenditures. 39 T.C.M. (CCH) at 738.

Under 26 U.S.C. § 212 "all the ordinary and necessary expenses paid or incurred during the taxable year ... for the production or collection of income ... [and] for the management, conservation, or maintenance of property held for the production of income" are deductible. "Prior to the enactment of ... Section 212 a person was not entitled to deduct expenses incurred in connection with income-producing nonbusiness property. The purpose of ... Section 212 was to create a parity of treatment between such nonbusiness expenses and similar business expenses which had long been deductible." *Brown v. United States,* 526 F.2d 135, 138 (6th Cir.1975) (citations omitted). *See also United States v. Gilmore,* 372 U.S. 39, 45, 83 S.Ct. 623, 627, 9 L.Ed.2d 570 (1963); *Bingham's Trust v. Commissioner,* 325 U.S. 365, 374, 65 S.Ct. 1232, 1237, 89 L.Ed. 1670 (1945); *Snyder v. United States,* 674 F.2d 1359,

---

**2.** *Aboussie* expressly declined to follow the decision in *Hoopengarner* reasoning that 26 U.S.C. § 212 only permits deduction of expenses in-

curred with respect to nonbusiness income. 779 F.2d at 428 n. 6.

1364 (10th Cir.1982); *Lucas v. Commissioner,* 388 F.2d 472, 473–74 (1st Cir.1967). Sections 162(a) and 212 are to be considered in *pari materia,* and the restrictions and qualifications applicable to the deductibility of trade or business expenses are also applicable to expenses covered by section 212. *Woodward v. Commissioner,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970); *Gilmore,* 372 U.S. at 45, 83 S.Ct. at 627; *Zell v. Commissioner,* 763 F.2d 1139, 1142 n. 2 (10th Cir.1985); *Snyder,* 674 F.2d at 1364; *Fischer v. United States,* 490 F.2d 218, 222 (7th Cir.1973).

The most important limitation applicable under 26 U.S.C. § 162(a) and 26 U.S.C. § 212 is that capital expenditures are not currently deductible. Sections 162(a) and 212 are subject to 26 U.S.C. § 263 which prohibits capital expenditures from being currently deductible. *Woodward,* 397 U.S. at 574–75, 90 S.Ct. at 1304–05; *Snyder,* 674 F.2d at 1364. Moreover, sections 162(a) and 212 limit deductions to "ordinary and necessary expenses." "If an expense is capital, it cannot be deducted as 'ordinary and necessary,' either as a business expense under § 162 of the Code or as an expense of 'management, conservation, or maintenance' under § 212." *Woodward,* 397 U.S. at 575, 90 S.Ct. at 1305. Instead, capital expenditures "are added to the basis of the capital asset with respect to which they are incurred, and are taken into account for tax purposes either through depreciation or by reducing the capital gain (or increasing the loss) when the asset is sold." *Woodward,* 397 U.S. at 574–75, 90 S.Ct. at 1304–05.

■ Under 26 U.S.C. § 162(a) and 26 U.S.C. § 212, the costs incurred in connection with the acquisition or construction of a capital asset are capital expenditures. *Commissioner v. Idaho Power Co.,* 418 U.S. 1, 12, 94 S.Ct. 2757, 2764, 41 L.Ed.2d 535 (1974); *Woodward,* 397 U.S. at 576, 90 S.Ct. at 1305; *Central Texas Savings & Loan Association,* 731 F.2d at 1184; *Louisville and Nashville Railroad Co. v. Commissioner,* 641 F.2d 435, 440 (6th Cir. 1981); *Brown,* 526 F.2d at 138. Expenses incurred during the start-up or pre-opening period of a trade or business are capital in nature, just as are other expenditures to create or acquire an asset. *See Central Texas Savings & Loan Association,* 731 F.2d at 1183; *Richmond Television Corp.,* 345 F.2d at 907–08. *See also* B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 20.4.4 (1981). An immediate deduction for expenses incurred before an enterprise has begun actual business operations is inappropriate because the expenses are part of the cost of establishing the enterprise. *See Central Texas Savings & Loan Association,* 731 F.2d at 1183; *Richmond Television Corp.,* 345 F.2d at 907–08.

The Tax Court's decisions here and in *Hoopengarner* are based on an unduly narrow interpretation of the "pre-opening expense doctrine." The Tax Court reasoned that the "pre-opening expense doctrine" has no relevance under 26 U.S.C. § 212 because it does not contain a "trade or business" requirement. 80 T.C. at 543. This reasoning ignores the rationale articulated in *Richmond Television Corp.* and other decisions that pre-opening expenses are not ordinary expenses but capital expenditures. *See Bennett Paper Corp.,* 699 F.2d at 451; *Madison Gas & Electric,* 633 F.2d at 517; *Richmond Television Corp.,* 345 F.2d at 907–08. Furthermore, the Tax Court's decision emasculates the "pre-opening expense doctrine." Individuals could contend, as the taxpayer did here, that pre-opening expenses are deductible under section 212 and thereby evade disallowance of the deduction under section 162(a).

The Tax Court's allowance of an immediate deduction for pre-opening expenses under 26 U.S.C. § 212 is plainly at odds with the legislative intent underlying section 212. It permits an individual to deduct expenses incurred in starting a new enterprise, while a corporation formed to conduct the same activity would be unable to deduct these same expenses. Congress restricted 26 U.S.C. § 212 to individuals, assuming that, since a corporation's activities almost invariably constitute a trade or business, a corporation could already deduct, under 26 U.S.C. § 162(a), those expenses

that an individual would be able to deduct under either section 162(a) or section 212. *See* B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 5.03 (4th ed. 1979). Congress did not intend to permit an individual to deduct expenses under section 212 that a corporation could not deduct under section 162(a). *See id.* at 5–9 n. 14. *Cf. Brown*, 526 F.2d at 138; *Lucas*, 388 F.2d at 474.

The Tax Court's allowance of an immediate deduction for pre-opening expenses under 26 U.S.C. § 212 renders 26 U.S.C. § 195, enacted in 1980 and amended in 1984, as it applies to pre-opening expenses incurred by individuals prior to July 1, 1984,[3] without meaning. Section 195 permits corporations and individuals to amortize start-up or pre-opening expenses over a period of sixty months or more. If an individual can currently deduct start-up or pre-opening expenses under section 212, permitting individuals to amortize those expenses is superfluous.

■ When 26 U.S.C. § 195 was enacted in 1980, Congress believed that pre-opening expenses were not deductible under either 26 U.S.C. § 162(a) or 26 U.S.C. § 212. In explaining the purpose of section 195, the Senate report summarized pre-existing law:

> Under present law, ordinary and necessary expenses paid or incurred in carrying on a trade or business, or engaging in a profit-seeking activity, are deductible. Expenses incurred prior to the establishment of a business normally are not deductible currently since they are not incurred in carrying on a trade or business or while engaging in a profit-seeking activity.

S.Rep. No. 96–1036, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 7293, 7300. Although the views of a later Congress are not controlling as to the meaning of pre-existing law, they carry some weight and may not be ignored when they are clearly relevant. *See First State Bank v. United States*, 599 F.2d 558,

563 n. 3 (3d Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Walt Disney Productions v. United States*, 480 F.2d 66, 68 (9th Cir.1973), *cert. denied*, 415 U.S. 934, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974).

### III.

■ The issue presented by the taxpayer's cross-appeal is whether the Tax Court correctly determined both the need for and the amount of an adjustment to taxpayer's distributive share of partnership losses to reflect that he was a partner in the limited partnership for only a portion of its taxable year. Because we hold that the loan commitment fees and management fees are not currently deductible, we need not address taxpayer's cross-appeal.

### IV.

Accordingly, the decision of the Tax Court holding that the limited partnership's pre-opening expenses are deductible by the taxpayer under 26 U.S.C. § 212 is REVERSED, and this cause is REMANDED to the Tax Court for proceedings consistent with this opinion.

---

**3.** In the Tax Reform Act of 1984, Congress prospectively overruled the results obtained here and in *Hoopengarner* by amending 26 U.S.C. § 195 to expand the definition of start-up expenditures to include any expenditures made (1) for any activity engaged in for profit or for the production of income, (2) before the day on which the active trade or business begins, and (3) in anticipation of such activity becoming an active trade or business.