ARTHUR H. HARDY AND JEANNINE C. HARDY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7856-86.        Filed December 13, 1989.

Arthur H. Hardy, pro se.
*Ronald J. Gardner,* for the respondent.

SWIFT, *Judge:* In a statutory notice of deficiency dated January 2, 1986, respondent determined a deficiency in petitioners' 1982 income tax liability of $3,227. After concessions, the issue remaining for decision is whether petitioners are entitled to a deduction under sections 162 or 212[1] for loan fees of $8,750.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners, Arthur H. and Jeannine C. Hardy, are husband and wife. During the tax year in issue and at the time of filing of the petition, petitioners resided in Sandy, Utah. Jeannine C. Hardy is a petitioner in this action solely because she and her husband timely filed a joint Federal income tax return for 1982. All references to "petitioner" are to Arthur H. Hardy.

During 1982, petitioner was a full-time employee of the Utah Department of Education. During evenings and weekends, petitioner also managed approximately 45 rental homes owned by Dalton Realty of Palo Alto, California, that were located in the Salt Lake City metropolitan area. With the exception of one 3-bedroom home that petitioner rented out, petitioner did not own any investment or business realty.

In early 1982, petitioner contacted Mr. Charles Tisdale (Tisdale), who held himself out as a loan broker. Tisdale purportedly represented a lender by the name of Bancor, Inc. (Bancor), a California company. Petitioner sought Tisdale's services in order to obtain a multimillion dollar loan the proceeds of which he intended to use to purchase, on his own behalf, hotel, motel, and resort properties.

According to petitioner, Tisdale represented that Bancor would make a loan of $200 million to a group of borrowers, including petitioner, if the borrowers met certain credit requirements. The borrowers would have to have substantial personal net worth. They would have to provide as collateral security interests in real estate, and they would have to pay upfront loan fees.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in issue.

Petitioners, whose joint Federal income tax return for 1982 reflected total income in the amount of $34,533, did not have substantial personal net worth. Petitioner, therefore, contacted an acquaintance by the name of Antone Pryor (Pryor), who apparently had a substantial net worth. Pryor agreed to enter into the loan transaction with Bancor in his own name but to divide the loan proceeds equally with petitioner. Also, as part of petitioner's agreement with Pryor, petitioner was to pay the entire upfront loan fees with respect to the loan proceeds he and Pryor would receive.

Pryor was not obligated to repay petitioner any of the loan fees unless the loan proceeds were actually received. The agreement between petitioner and Pryor was entirely oral; no aspect of the agreement was reduced to writing.

Petitioner and Pryor allegedly comprised one of five groups that were to receive portions of the proceeds of the $200 million loan. Their portion of the loan was to be one-fifth, or $40 million, to be divided equally between them, petitioner to receive $20 million.

The loan fee due Bancor with respect to the loan proceeds petitioner and Pryor were to receive was $5,500. Petitioner obtained a second mortgage loan on the home he owned, and in May of 1982 petitioner used a portion of the second mortgage loan proceeds to pay the $5,500 loan fee. Petitioner and Pryor also were required to pay a $500 "local loan fee" associated with the $40 million loan. Apparently, petitioner and Pryor each paid one-half or $250 of this fee.

Petitioner was informed by Tisdale that certain individuals in the other groups who were to participate in the $200 million loan were not willing to pay their share of the loan fees and that petitioner would have to pay an additional $3,000 in loan fees in order to prevent the entire $200 million loan from falling through. By cashier's check dated May 6, 1982, petitioner paid an additional $3,000 to Bancor for this purpose.

Following payment by petitioner of the $8,750 in loan fees, petitioner kept in touch with Tisdale on a regular basis to monitor the progress of the loan application. He also placed several phone calls to Bancor in California. Sometime during the summer of 1982, petitioner was told by Tisdale

that the loan had been approved but that Bancor was continuing to process the loan and to complete the necessary paperwork. No loan application or any other document relating to the loan is contained in the record.

In the summer of 1982, petitioner began investigating commercial properties that were for sale in anticipation of receiving his $20 million share of the loan proceeds. The properties were large, established hotel, motel, or resort properties, including the Homestead in Heber, Utah, the Roadway Inn in Provo, Utah, and the Lotus Inn in Las Vegas, Nevada.

In July or August of 1982, petitioner learned that Tisdale was serving time in an Idaho State prison. Earlier in 1982 when the loan was being negotiated, Tisdale apparently had been released from prison on bail, pending appeal of a conviction for an unspecified crime. The loan proceeds were not received by petitioner in 1982, 1983, nor in any subsequent year.

On audit, respondent denied the $8,750 ordinary deduction petitioners claimed on Schedule C of their 1982 joint Federal income tax return with respect to the loan fees.

## OPINION

Section 162(a) allows a deduction for ordinary and necessary expenses of carrying on a trade or business.[2] In order for expenses to be deductible under section 162, the expenses must relate to a trade or business functioning at the time the expenses are incurred. Start-up or pre-opening expenses are not currently deductible under section 162. *Richmond Television Corp. v. United States,* 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues 362 U.S. 68 (1965), original holding on this issue reaffd. 354 F.2d 410, 411 (4th Cir. 1965), overruled on other grounds *NCNB Corp. v. United States,* 684 F.2d 285, 289 (4th Cir. 1982); *Goodwin v. Commissioner,* 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); *Polachek v. Commissioner,* 22 T.C. 858, 863 (1954). This has

---

[2]Sec. 162 provides, in part, as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

been referred to as the "pre-opening expense doctrine." See *Sorrell v. Commissioner*, 882 F.2d 484, 490 (11th Cir. 1989), revg. T.C. Memo. 1987-351, and cases cited.

As indicated, petitioner's part-time work managing 45 rental homes did not include equity ownership of any real property, except for one of the homes. Petitioner did not own or manage any hotels, motels, or resorts. We conclude that petitioner's intent to use anticipated loan proceeds to purchase and thereafter to own and manage large commercial hotel and motel properties was unrelated to petitioner's current business and income-producing activities and constituted the attempted start-up by petitioner of a new trade or business. The loan fees in question were incurred during the pre-opening phase of petitioner's attempted new business and accordingly are not deductible under section 162.

We turn now to the question of whether the loan fees are deductible under section 212. Section 212 allows individual taxpayers current deductions for all ordinary and necessary expenses paid for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.[3] The pre-opening expense doctrine has been held by the Tax Court in two published opinions to be inapplicable to the deductibility of expenses claimed by individuals under section 212. See *Johnsen v. Commissioner*, 83 T.C. 103, 119 (1984), revd. 794 F.2d 1157 (6th Cir. 1986); *Hoopengarner v. Commissioner*, 80 T.C. 538, 543 (1983), affd. by unpublished opinion 745 F.2d 66 (9th Cir. 1984). [4]

These Tax Court opinions are based primarily on the fact that the language of section 212 does not include the "carrying on a trade or business" language of section 162. Under these opinions, individual taxpayers are allowed to

---

[3]Sec. 212 provides, in part, as follows:

SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

    (1) for the production or collection of income;

    (2) for the management, conservation, or maintenance of property held for the production of income; * * *

[4]See also in support of the same proposition the following Tax Court Memorandum Opinions: *Sorrell v. Commissioner*, T.C. Memo. 1987-351, revd. 882 F.2d 484, 490 (11th Cir. 1989); *Lewis v. Commissioner*, T.C. Memo. 1986-155, revd. 861 F.2d 1232 (10th Cir. 1988); *Fishman v. Commissioner*, T.C. Memo. 1986-127, revd. 837 F.2d 309 (7th Cir. 1988), cert. denied 487 U.S. 1235 (1988).

deduct, under section 212, expenses relating to the start-up of a trade or business or of an income-producing activity even though the expenses are incurred before the new business or the new income-producing activity is functioning.

On appeal, *Hoopengarner v. Commissioner, supra,* was affirmed in an unpublished opinion of the Ninth Circuit. 745 F.2d 66 (9th Cir. 1984).[5] Each of the Tax Court's other published and Memorandum Opinions on this issue, however, that has followed the *Hoopengarner* authority has been reversed. *Sorrell v. Commissioner,* T.C. Memo. 1987-351, revd. 882 F.2d 484 (11th Cir. 1989); *Lewis v. Commissioner,* T.C. Memo. 1986-155, revd. 861 F.2d 1232 (10th Cir. 1988); *Fishman v. Commissioner,* T.C. Memo. 1986-127, revd. 837 F.2d 309 (7th Cir. 1988), cert. denied 487 U.S. 1235 (1988); *Johnsen v. Commissioner,* 83 T.C. 103 (1984), revd. 794 F.2d 1157 (6th Cir. 1986). Also, although the appeal did not involve a decision of this Court, in *Aboussie v. United States,* 779 F.2d 424 (8th Cir. 1985), affg. on this issue 600 F. Supp. 32 (E.D. Mo. 1984), the Eighth Circuit refused to follow *Hoopengarner.*

The number of Courts of Appeals that has expressly rejected the Tax Court's *Hoopengarner* line of cases and the rationale set forth in the opinions of the Courts of Appeals make it appropriate, at this time, that we reconsider *Hoopengarner* and its progeny. The Courts of Appeals base their holdings on the following points: (1) The pre-opening expense doctrine is grounded not only on the "trade or business" language of section 162, but also on the requirement that the deduction of expenses should be matched in a particular year with the earning of related income; (2) Congress intended parity in the treatment of expenses under sections 162 and 212; and (3) the *Hoopengarner* line of cases renders meaningless section 195, as enacted in 1980 and as amended in 1984.

With regard to the first point, the Seventh Circuit explained that the differences in language between sections 162 and 212 do not affect the basic tax law rule that

---

[5]The precedential value of the Ninth Circuit's affirmance of *Hoopengarner* is limited by Ninth Circuit Rule 36-3 under which unpublished opinions may only be cited when they are relevant under the doctrines of res judicata, collateral estoppel, or law of the case.

"income and expense must be matched temporally in order to minimize the inevitable misallocations of resources that a taxing system creates." *Fishman v. Commissioner,* 837 F.2d at 312. This principle is codified in section 263(a),[6] which classifies as capital expenditures certain items that would be currently deductible expenses but for the fact that they are expended for the acquisition or permanent improvement of capital assets. As capital expenditures, they are not eligible for current expense treatment.

This capitalization rule and its application to both section 162 and section 212 have been firmly established in the case law. See *Commissioner v. Idaho Power,* 418 U.S. 1, 12 (1974); *Woodward v. Commissioner,* 397 U.S. 572, 575 (1970); *Central Texas Savings & Loan Assoc. v. United States,* 731 F.2d 1181, 1184 (5th Cir. 1984); *Louisville and Nashville Railroad Co. v. Commissioner,* 641 F.2d 435, 440 (6th Cir. 1981); *Brown v. United States,* 526 F.2d 135, 138 (6th Cir. 1975); *Medco Products Co. v. Commissioner,* 523 F.2d 137, 138 (10th Cir. 1975), affg. 62 T.C. 509 (1974). The pre-opening expense doctrine is an important part of this rule of capitalization.

The costs of starting up a new trade or business or a new income-producing activity are inherently capital because they are expenses of creating or acquiring a capital asset. See *Johnsen v. Commissioner,* 794 F.2d at 1162, and cases cited. Once it is recognized that pre-opening expenses are not ordinary expenses, but are capital expenditures, it is clear that the rationale of the pre-opening expense doctrine applies both to sections 162 and 212.

With regard further to this first point, and relying in part on section 263, the Eleventh Circuit in *Sorrell v. Commissioner, supra,* explained as follows:

Indeed, section 263 highlights the basic flaw in the taxpayer's position. [The taxpayer's] position focuses only on the first rationale underlying the pre-opening expense doctrine—i.e., that pre-opening expenses are not deductible currently because, before beginning to operate as a going concern, the taxpayer is not engaging in a trade or business. [The

---

[6]Sec. 263 provides, in part, as follows:

SEC. 263. CAPITAL EXPENDITURES.

  (a) GENERAL RULE.—No deduction shall be allowed for—

    (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

taxpayer] turns a blind eye to the second rationale for the doctrine: that pre-opening expenses are not deductible currently because they represent the cost of acquiring capital asset. * * * [882 F.2d at 488.]

With regard to the second point (namely, parity in the treatment of expenses under sections 162 and 212), support for application of the pre-opening expense doctrine to section 212 is supplied by the legislative history of that section. Before enactment of the predecessor to section 212, individuals could not deduct expenses incurred in connection with income-producing property or activities unless the activities rose to the level of a trade or business. The purpose of the predecessor to section 212 was to create a parallel to section 162 and to provide for "a parity of treatment between such nonbusiness expenses and similar business expenses which had long been deductible." *Sorrell v. Commissioner,* 882 F.2d at 487 (quoting *Johnsen v. Commissioner,* 794 F.2d at 1161, and *Brown v. Commissioner,* 526 F.2d at 138).

In enacting section 212, there was no intent to allow individual taxpayers to deduct expenses under section 212 that were not deductible under section 162. As the legislative history of section 212 explains, taxpayers were not thereby intended to be free from any of the "restrictions and limitations that apply in the case of a deduction under" section 162. *Fishman v. Commissioner,* 837 F.2d at 311 (quoting H. Rept. 2333, 77th Cong. 2d Sess. at 75 (1942), 1942-2 C.B. 372, 430; S. Rept. 1631, 77th Cong., 2d Sess. at 88 (1942), 1942-2 C.B. 504, 571). Section 162 and section 212 are in pari materia as to the distinction between capital expenditures and ordinary expenses. *Woodward v. Commissioner, supra* at 575 n. 3.

In addition, the use in section 212 of the word "expenses"—a word generally associated with currently deductible items—suggests that Congress did not intend to allow current deductions for items typically regarded as capital expenditures. *Fishman v. Commissioner,* 837 F.2d at 313.

With regard to the third point (namely, the meaning of section 195 if the *Hoopengarner* line of cases is correct), section 195 was enacted in 1980 to allow corporations and individuals to amortize startup costs. It is clear from the legislative history that Congress then believed pre-opening

expenses not to be currently deductible under either section 162 or section 212. *Sorrell v. Commissioner,* 882 F.2d at 489; *Johnsen v. Commissioner,* 794 F.2d at 1163. The Senate Report accompanying section 195 explained that—

under present law, ordinary and necessary expenses paid or incurred in carrying on a trade or business, or engaging in a profit-seeking activity, are deductible. Expenses incurred prior to the establishment of a business normally are not deductible currently since they are not incurred in carrying on a trade or business *or while engaging in a profit-seeking activity.* [S. Rept. 96-1036, at 10 (1980). Emphasis added.]

There would have been no point in making section 195 applicable to individuals if they were already able, as our opinions in *Johnsen* and *Hoopengarner* held, to deduct these expenses under section 212, since a current deduction is almost always preferable to amortization. *Fishman v. Commissioner,* 837 F.2d at 313.

In 1984, Congress amended section 195. One of the express purposes of the amendment was to disallow deductions of the type permitted under the *Hoopengarner* line of cases. *Hoopengarner* is expressly cited in the legislative history as an example of "pre-opening costs" that are to be brought within the definition of "start-up expenditures" and to be treated as deferred capital expenditures with an election to amortize them over not less than 60 months. Senate Finance Committee, Explanation of the Provisions of Deficit Reduction Act, at 282 (S. Print 98-169 (Vol. 1) 1984).

The 1984 amendment to section 195 was made prospective only. Rather, however, than interpreting the prospective-only effect of this legislation as an indication of Congress's approval of *Hoopengarner* for prior years, we interpret it as an attempt to clarify Congress's original intent. We agree with the Eleventh Circuit's explanation of the significance to the issue before us of the prospective-only effect of section 195 as originally enacted in 1980 and as amended in 1984, as follows:

[The taxpayer] attempts to dilute the force of the legislative history by emphasizing that Congress's enactment of section 195 operated prospectively. However, the prospective effect does not undermine the weight of the legislative history as an indication of Congress's understanding of the prior law. Congress's disagreement with the outcome in *Hoopengarner,* evidenced by the 1984 legislative reversal of the case, bolsters the

argument that Congress understood the pre-opening expense doctrine to apply to section 212 and acted to resolve the judicial confusion created by *Hoopengarner. See* Senate Finance Committee, Deficit Reduction Act of 1984, Explanation of Provisions, 98th Cong., 2d Sess. at 282 (S. Print 98-169 (Vol. 1) 1984). While [the taxpayer] points to language in the 1984 committee report noting that the "present law is unclear whether a specific item should be capitalized, expensed, or amortized as provided in section 195," we do not understand this to mean that *Congress's* viewpoint was unclear, especially in light of the above mentioned legislative history. *Id.* Instead, the context of that passage makes evident that it relates to the fact that decisions such as *Hoopengarner* had intervened since the provision's 1980 enactment, presenting conflicting applications of the pre-opening expense doctrine. *See* Staff of the Joint Committee on Taxation, 98th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 295-96 (Comm. Print 1984). [*Sorrell v. Commissioner,* 882 F.2d at 489-490; fn. ref. omitted.]

See also *Johnsen v. Commissioner,* 794 F.2d at 1163.

Justice Brandeis' comment in *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 407-408 (1932), (Brandeis, J., dissenting), with regard to decisions of the Supreme Court involving questions of constitutional law, is apropos here (especially in light of the unsettled state of the relevant court decisions):

The Court bows to the lessons of experience and the force of better reasoning, recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function. * * * [Fn. ref. omitted.]

Based on the above analysis, consideration of our prior opinions, and the contrary authority from the circuit courts, we reverse our holdings in *Johnsen v. Commissioner* and *Hoopengarner v. Commissioner* insofar as they held that the pre-opening expense doctrine is not applicable to section 212.[7]

*Decision will be entered under Rule 155.*

Reviewed by the Court.
NIMS, CHABOT, PARKER, KÖRNER, HAMBLEN, COHEN, CLAPP, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS,

---

[7]Alternative arguments were suggested by the Court to petitioner to support the allowance of the item in question. Petitioner, however, did not make those arguments.

WELLS, RUWE, WHALEN, AND COLVIN, *JJ.,* agree with this opinion.