T.C. Memo. 2009-133

UNITED STATES TAX COURT

PAUL RUDNICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17500-06.                    Filed June 9, 2009.

Paul Rudnick, pro se.

<u>Margaret Burow</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency of

$103,194 and a section 6662(a)[1] accuracy-related penalty of

$20,634 with respect to petitioner's 2004 Federal income tax.

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are:

(1) Whether, and to what extent, petitioner is entitled to certain deductions claimed on his Schedule A, Itemized Deductions;

(2) whether, and to what extent, petitioner is entitled to business expense deductions claimed with respect to a business activity known as Eglobal Call Solutions;

(3) whether petitioner is liable for the 10-percent additional tax under section 72(t) on early distributions from qualified retirement plans; and

(4) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulation of facts and supplemental stipulation of facts into our findings by this reference. Petitioner resided in California when he petitioned this Court.

Before 2004 petitioner was employed as president of a software development company, Five-by-Five Networks, Inc. (Five-

---

[2]Respondent concedes the $101 dividend income adjustment. Respondent also concedes that petitioner is entitled to a home mortgage interest deduction of $32,905, and petitioner concedes that he is not entitled to the remaining home mortgage interest deduction of $3,423. Respondent concedes that petitioner is entitled to $10,998 of deductions claimed on Schedule C, Profit or Loss From Business, for a business activity known as 4-Play, and petitioner concedes that he is not entitled to the remainder of those deductions claimed.

by-Five Networks).  Before and during 2004 petitioner was involved in various business ventures related to software development and telephone call centers in Vietnam and the United States.

Petitioner's Testimony at Trial

Petitioner testified regarding his involvement with several business entities during 2003 and 2004.  Although we find that petitioner was engaged in a business activity during 2004 under the name Eglobal Call Solutions, petitioner did not introduce documents to establish the relationship, if any, between Eglobal Call Solutions and other business activities mentioned during his testimony.  We are not willing to make findings of fact regarding those business activities based solely on petitioner's uncorroborated testimony.  However, we summarize petitioner's testimony to provide a framework for our holdings.  That summary is set forth below.

Five-by-Five Networks[3] started a software development center in Vietnam.  Sometime around December 2003 or January 2004, when Five-by-Five Networks ran out of money, petitioner acquired as severance from his employment with Five-by-Five Networks[4] the

_____

[3]The record does not show what kind of entity Five-by-Five Networks was, nor does the record show who owned it.

[4]The record does not show in which year (2003 or 2004) this occurred or whether petitioner included the value of the software program in his income.

rights[5] to a software development program that the Vietnam center was developing. Specifically, petitioner acquired the rights to two assets--I-Contact, integrated software that assisted with Internet sales, and Hey-Voice, call center software that provided an automated list of options over the telephone. However, when petitioner acquired the rights to the software, it was not ready for immediate use.

After receiving the rights to the software from Five-by-Five Networks, petitioner arranged for employees at a Vietnam call center to integrate the software petitioner had acquired from Five-by-Five Networks into a software program called Integrated Agent Desktop. Integrated Agent Desktop was necessary for petitioner's business to operate. Development and testing of Integrated Agent Desktop occurred from early 2004 through August 2004. In March 2004 Integrated Agent Desktop was brought online in beta version, and in June 2004 it was formally launched. Around August or September 2004 Integrated Agent Desktop underwent a major revision.

In approximately December 2003 or January 2004 petitioner also obtained[6] for $250,000 the rights to several assets from Eglobal Call Networks, Inc. (Eglobal Call Networks), a

---

[5]The record does not disclose how or in what name petitioner acquired the rights.

[6]The record does not disclose how or in what name petitioner acquired the assets.

corporation that was in the business of selling calling cards. Those assets included a Voice Over IP network router in Vietnam, fiber optic links from San Francisco to Hong Kong and from Hong Kong to Vietnam, and billing equipment in San Francisco. Petitioner made a downpayment of $125,000 to Eglobal Call Networks and paid the balance of the purchase price by giving Eglobal Call Networks cash to keep its business afloat.[7] Petitioner and Eglobal Call Networks did not execute any agreement or bill of sale formalizing the purchase. After the purchase, petitioner began operating the assets jointly with Eglobal Call Networks.

During 2004 petitioner effected several transactions using the name Eglobal Call Networks. For example, on February 19 and March 20, 2004, petitioner transacted with Business Wire using Eglobal Call Networks's account. Petitioner also placed an order with Source Voice Data Systems Solutions under the name Eglobal Call Networks and signed loan documents as president of Eglobal Call Networks. In addition, petitioner had some control of Eglobal Call Networks's checking account and used Eglobal Call Networks to transfer money to Vietnam.

---

[7]Petitioner did not introduce any bank records to document his investment, nor did he explain the relationship between Eglobal Call Solutions (the business he operated) and Eglobal Call Networks.

Petitioner also formed a company called Eglobal Vietnam, Ltd. (Eglobal Vietnam). Petitioner needed Eglobal Vietnam in order to conduct business in Vietnam. Eglobal Vietnam operated the call center in Vietnam. Although petitioner provided funding to Eglobal Vietnam, he held no ownership interest.[8]

In 2004 Eglobal Vietnam entered into a lease agreement with Quang Trung Software City Development Co. for a facility in Vietnam. Eglobal Vietnam also contracted with Quang Trung Software City Development Co. to construct a call center facility in Vietnam. In July 2004 Eglobal Vietnam moved into the newly constructed call center facility, and in September 2004 the call center started generating customer traffic.

In October 2004 Eglobal Call Solutions began to generate revenue. During 2004 Eglobal Call Solutions's revenue came from two customers, Tata Consulting and H & R Block. Eglobal Call Solutions earned income when employees of the two customers contacted the call center in Vietnam for technical support involving software operation.[9]

Petitioner employed a bookkeeper in Vietnam to help keep his business records. The bookkeeper used Quickbooks to keep

---

[8]Petitioner did not introduce any documentation regarding the formation and ownership of Eglobal Vietnam.

[9]Petitioner did not explain the relationship between Eglobal Call Solutions, Eglobal Call Networks, and Eglobal Vietnam, but his testimony implied that Eglobal Call Solutions income was generated by the business activity in Vietnam.

records, and petitioner reviewed the records when he visited Vietnam.  The bookkeeper provided petitioner information from the Quickbooks records to complete his tax returns.

In 2005 Vietnamese authorities raided the Vietnam facility because, unbeknownst to petitioner, a manager of Eglobal Vietnam was operating without a required license.  During the raid the authorities seized various business records.

Petitioner's 2004 Return

Petitioner, a cash basis taxpayer, prepared his 2004 Form 1040, U.S. Individual Income Tax Return (2004 return). Petitioner's Schedule A attached to his 2004 return showed the following:

| Schedule A Expenses | Amount |
| --- | --- |
| Medical and dental expenses[1] | $41,000 |
| Taxes | |
| State and local income taxes | 2,621 |
| Real estate taxes | 10,144 |
| Personal property taxes | 3,450 |
| Home mortgage interest and points | 36,328 |
| Gifts to charity | |
| Gifts by cash or check | 1,360 |
| Other than cash or check | 112 |
| Job expenses and most other miscellaneous deductions[2] | |
| Unreimbursed employee expenses | 118,052 |
| Attorney's and accountant's fees | 26,575 |

[1]After the application of the 7.5-percent floor under sec. 213(a).

[2]Amounts reflect deductions as reported before application of the 2-percent limitation under sec. 67(a).

On the Schedule C, Profit or Loss From Business, for Eglobal Call Solutions attached to his 2004 return, petitioner reported gross receipts of $45,060 and the following Schedule C expenses:

| Schedule C Expenses | Amount |
| --- | --- |
| Advertising | $34,090 |
| Commissions and fees | 1,222 |
| Contract labor | 4,534 |
| Employee benefit programs | 4,532 |
| Insurance | 12,389 |
| Legal and professional services | 1,459 |
| Office expenses | 8,123 |
| Rent or lease | |
| Other business property | 88,045 |
| Supplies | 2,333 |
| Taxes and licenses | 3,123 |
| Travel | 6,123 |
| Meals and entertainment | [1]6,745 |
| Utilities | 13,455 |
| Wages | 96,050 |

[1]Amount reflects the deductions for meals and entertainment expenses as reported before application of the 50-percent limitation under sec. 274(n).

Petitioner, who was not yet 59-1/2, reported $208,226 of taxable pension and annuity income on his 2004 return. Petitioner attached to his 2004 return Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts. On Form 5329 petitioner reported early distributions of $2,895 that were subject to the section 72(t) additional tax and early distributions of $28,900 that were not subject to section 72(t) additional tax.[10]

[10]It appears that there is a mistake on petitioner's Form 5329. He was supposed to report on line 1 all early

(continued...)

In a notice of deficiency dated June 1, 2006, respondent disallowed the medical and dental expenses, unreimbursed employee expenses, attorney's and accountant's fees, and part of the home mortgage interest and points reported on petitioner's Schedule A. Respondent also disallowed all deductions relating to Eglobal Call Solutions claimed on petitioner's Schedule C.[11]  Respondent also determined that petitioner was liable for section 72(t) additional tax of $20,823 and a section 6662(a) accuracy-related penalty of $20,634.

Petitioner timely petitioned this Court, and a trial was held.  After trial we kept the record open to allow petitioner to introduce additional evidence to substantiate his Schedule A and Schedule C deductions.  Specifically, we instructed petitioner (1) to arrange for respondent to conduct a telephone interview of the bookkeeper in Vietnam, (2) to obtain health insurance records to substantiate his medical expenses, and (3) to provide 2004 and 2005 bank statements with respect to the Eglobal Call Solutions account and his personal account.  Petitioner did not provide any

---

[10](...continued)
distributions included in income and then, of those distributions reported on line 1, report on line 2 the distributions that are not subject to the additional tax.

[11]Respondent also disallowed all expenses claimed on a separate Schedule C relating to a business called 4-Play. However, the parties have resolved this issue by agreement.

additional evidence, nor did he file a posttrial brief with the Court.

OPINION

I.   Exhibits 6-P, 7-P, and 8-P

At trial we reserved ruling on petitioner's Exhibits 6-P, 7-P, and 8-P.  Exhibit 6-P is a computer spreadsheet showing various expenses for a 12-month period.  Respondent objected to Exhibit 6-P on grounds of authenticity, best evidence, and hearsay and because it was prepared in anticipation of litigation.  In his brief respondent contends that Exhibit 6-P is an improper summary, chart, or calculation under rule 1006 of the Federal Rules of Evidence because the underlying documents used to prepare the spreadsheet were not made available to respondent and petitioner provided no testimony regarding the preparation of the spreadsheet.

Rule 1006 of the Federal Rules of Evidence provides that the contents of voluminous writings that cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.  It also provides that the originals or duplicates of the summarized writings must be made available for examination or copying, or both, by other parties at a reasonable time and place.

Exhibit 6-P does not show the year to which the spreadsheet relates or who prepared the spreadsheet.  Petitioner did not

present any credible testimony about the source of the amounts shown in the spreadsheet or what the expenses represented.  In addition, even though we gave petitioner a posttrial opportunity to provide to respondent and to the Court documentation substantiating the expenses he claimed, petitioner did not take advantage of the opportunity.  Because petitioner did not produce the underlying documentation that Exhibit 6-P purportedly summarized as required by rule 1006 of the Federal Rules of Evidence, we conclude that Exhibit 6-P is inadmissible.

At trial respondent also objected to Exhibits 7-P and 8-P on the basis of relevancy because they related to 2003 and not 2004. Exhibit 7-P is a credit card statement showing charges for December 2003.  Petitioner argued at trial that Exhibit 7-P is relevant because he paid the credit card statement in 2004. However, petitioner did not prove that he paid the credit card statement in 2004.  We conclude that Exhibit 7-P is not relevant and therefore is inadmissible.  Exhibit 8-P consists of copies of the following receipts:  (1) Radioshack receipt dated January 9, 2004, paid in cash, (2) San Francisco International Airport Parking Receipt dated December 20, 2003, paid in cash, and (3) Dougherty Shell receipt dated January 29, 2004, paid by credit card.  We conclude that the San Francisco International Airport Parking Receipt is not relevant because it was paid in 2003.

However, because the other receipts reflect payments in 2004, we shall admit Exhibit 8-P.

## II. Burden of Proof

In general, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that section 7491(a), which shifts the burden of proof to respondent if its requirements are met, applies, and petitioner has not produced evidence to show he meets the requirements of section 7491(a). The burden of proof with respect to the deficiency in his tax, therefore, remains on petitioner.

## III. Schedule A Deductions

### A. Medical Expenses

Expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer shall be allowed as a deduction to the extent that such expenses exceed 7.5 percent of adjusted gross income. Sec. 213(a). A deduction is allowed only with respect to medical expenses actually paid during the taxable year, regardless of when the incident or event which occasioned the expenses occurred. Sec. 1.213-1(a)(1), Income Tax Regs.

Petitioner deducted $41,000 of medical expenses on his Schedule A. In support of this deduction, petitioner introduced

into evidence several documents evidencing that he underwent
outpatient surgery in December 2004.  Those documents included
documents titled "Outpatient Surgery Postoperative
Orders/Discharge Instructions", "Anesthesia Risk Information",
and "Consent to Surgery/Special Procedures/Anesthesia", three
Explanation of Benefit forms from petitioner's health insurer,[12]
and a medical invoice for $10.49.  Petitioner, however,
introduced no credible evidence to prove that he paid any medical
expenses in 2004.  Although we allowed petitioner an opportunity
after trial to offer substantiation of the medical expenses he
allegedly paid in 2004, petitioner failed to do so.

Because petitioner did not prove he paid any medical
expenses in 2004, we sustain respondent's determination
disallowing petitioner's medical expense deduction.

B.    Unreimbursed Employee Expenses

A taxpayer may deduct unreimbursed employee expenses as an
ordinary and necessary business expense under section 162.  Lucas
v. Commissioner, 79 T.C. 1, 6 (1982).  However, an employee
cannot deduct such expenses to the extent that the employee is
entitled to reimbursement from his or her employer for
expenditures related to his or her status as an employee.  Id. at
7.  Along with other miscellaneous itemized deductions,

---

[12]Although petitioner provided several forms from his health
insurer, petitioner testified that the cost of his procedure was
disallowed by his insurer because he had not paid the premiums.

unreimbursed employee expenses are subject to the 2-percent of adjusted gross income limitation under section 67(a).

Petitioner claimed a $118,052 deduction for unreimbursed employee expenses. Petitioner testified that some of the unreimbursed employee expenses related to his employment with Five-by-Five Networks and were expenses not paid by Five-by-Five Networks. Petitioner, however, did not introduce any credible evidence that he actually paid any employee expenses or that he was not entitled to reimbursement from Five-by-Five Networks for those expenses. In addition, petitioner did not introduce any credible evidence regarding that part of his unreimbursed employee expense deduction that did not relate to his employment with Five-by-Five Networks.

Because petitioner failed to prove he is entitled to a deduction for unreimbursed employee expenses, we sustain respondent's determination disallowing the deduction.

C.    Attorney's and Accountant's Fees

Petitioner claimed a $26,575 deduction for attorney's and accountant's fees as other miscellaneous itemized deductions. Petitioner testified that at least some of those fees related to two lawsuits involving his neighbor, one dealing with a sprinkler system and the other involving a dispute over petitioner's tree. Petitioner did not introduce documentation of his legal expenses from the attorney representing him in those matters, nor did he

introduce any credible evidence establishing that he actually paid any fees to a professional or that the fees, if paid, were deductible.[13]

Because petitioner failed to introduce credible evidence to prove that he paid attorney's and accountant's fees during 2004 and that the fees, if paid, were deductible, we sustain respondent's determination disallowing the deduction.

IV.  Schedule C Deductions for Eglobal Call Solutions

Section 162(a) permits a taxpayer to deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  See Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971).  In order for a taxpayer "to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  An expense is ordinary if it is normal, usual, or customary within a particular trade, business, or industry or arises from a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.

_____

[13]Legal expenses that are personal are not deductible.  Sec. 262(a).

See Commissioner v. Lincoln Sav. & Loan Association, supra at 353; Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 262(a) disallows deductions for personal, living, or family expenses. See also sec. 1.162-17(a), Income Tax Regs.

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable in some circumstances (the Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must be sufficient evidence in the record, however, to permit us to conclude that the taxpayer paid or incurred a deductible expense in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, we bear heavily upon the taxpayer who failed to maintain required records and to substantiate deductions as the Code requires. See Cohan v. Commissioner, supra at 544.

For certain kinds of business expenses, such as travel, meals, and entertainment expenses, section 274(d) overrides the Cohan rule. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable. See also sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Respondent does not dispute that petitioner had a business or that he was involved in that business with continuity and regularity and for profit. Respondent contends, however, that petitioner has not substantiated the expenses he claimed on his Schedule C relating to Eglobal Call Solutions and that petitioner has provided only self-serving testimony that he is entitled to the deductions. In addition respondent contends that the limited documentation introduced into evidence appears to reflect the payment of startup expenditures that are not deductible under section 195.

Section 195(a) provides that, except as otherwise provided therein, no deduction is allowed for startup expenditures. See also Hardy v. Commissioner, 93 T.C. 684, 687-693 (1989), affd. in part and remanded in part per order (10th Cir., Oct. 29, 1990). Section 195(c)(1) defines startup expenditures to mean any amount paid or incurred in connection with (i) investigating the creation or acquisition of an active trade or business, or (ii) creating an active trade or business, or (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of becoming an active trade or business, which if paid or incurred in connection with the operation of an existing active trade or business would be allowed as a deduction for the taxable

year in which paid or incurred.[14]  Under section 195(c)(2)(B), an acquired trade or business is treated as beginning when the taxpayer acquires it.[15]

Although petitioner testified he acquired various assets during 2004, he also testified that the software assets he acquired were still under development until approximately September 2004 when a revision of the integrated software was completed.  According to petitioner, the Vietnam call center did not begin to service customers until September 2004 and did not generate any revenue until October 2004.  Even if we accept petitioner's general and very vague testimony as credible and assume that the Vietnam call center's business activity was a part of petitioner's Schedule C business, Eglobal Call Solutions, the testimony reveals that call center did not begin to function until September 2004 at the earliest and did not generate revenue until October 2004.  Consequently, we conclude on the record

---

[14]Sec. 195(b)(1) was amended by the American Jobs Creation Act of 2004, Pub. L. 108-357, sec. 902(a)(1), 118 Stat. 1651, effective for amounts paid or incurred after Oct. 22, 2004. Under sec. 195(b)(1), as in effect both before and after the 2004 amendment, a taxpayer may elect to treat startup expenditures as deferred expenses that may be amortized as provided therein, and the amortization period cannot begin any earlier than the month in which the active trade or business begins.  It does not appear that petitioner elected to amortize any startup expenditures with respect to Eglobal Call Solutions, and petitioner does not argue that he made the election.

[15]Petitioner testified that he acquired various assets.  We infer from this testimony that he did not acquire an active trade or business during or before 2004.

before us that any expenses paid before September 2004 were nondeductible startup expenditures under section 195(a).

We turn now to specific expenses petitioner deducted on the Schedule C for Eglobal Call Solutions.

A.  Advertising

Petitioner claimed a $34,090 deduction for advertising expenses on his Schedule C.  To substantiate the advertising expenses, petitioner introduced into evidence several documents including:  (1) An invoice dated February 19, 2004, from Business Wire addressed to Eglobal Call Networks showing a paid membership fee of $120, (2) a confirmation dated March 25, 2004, of a $74.93 payment with petitioner's credit card for promoting an Internet Web site address described as "www.eglobalcallsolutions.com" showing the company name as "eglobalcall networks, inc", (3) an invoice dated March 31, 2004, from Business Wire for $440, (4) a confirmation dated April 28, 2004, of a $49.95 payment with petitioner's credit card for promoting the Internet Web site "www.eglobalcallsolutions.com", and (5) an invoice for $1,081.42 dated April 30, 2004, from Focus Print n Copy primarily for "700 Brochures 'eGlobalCall Solutions'" that was stamped paid.

Because the Business Wire invoices show that the amounts were paid on behalf of Eglobal Call Networks and not Eglobal Call Solutions or petitioner himself, we cannot determine whether they were paid by petitioner or whether they related to Eglobal Call

Solutions. And although the payment for promoting Eglobal Call Solutions's Internet Web site and the payment for the Focus Print n Copy invoice appear to relate to Eglobal Call Solutions, all of the expenses were paid before September 2004.

In addition to the expenses discussed above, petitioner testified that most of the advertising expenses related to the purchase of four customer lists at $5,000 each. Petitioner testified that he paid for the customer lists by wire transfers from his personal checking account;[16] but even after we gave petitioner a second opportunity to substantiate the payments after trial, petitioner never introduced evidence of the wire transfers that he claims he made, nor did he submit any other documentation to establish he paid for the customer lists.[17]

All of the documentation of advertising expenses in the record relates to expenses paid before petitioner's business became operational. See, e.g., Feerick v. Commissioner, T.C. Memo. 1991-330. We conclude, therefore, that petitioner has failed to prove he paid deductible advertising expenses during

---

[16]Petitioner testified that in the beginning he used his personal checking account to pay expenses, but then he started using one of Eglobal Call Networks's checking accounts.

[17]Even if petitioner were able to substantiate that he paid for four customer lists, it appears that petitioner would not be entitled a full deduction in 2004 for those payments. Customer lists are generally considered sec. 197 intangibles that must be amortized over a 15-year period. Sec. 197(a), (d)(1)(C)(ii); sec. 1.197-2(b)(4), Income Tax Regs.

2004, and we sustain respondent's determination disallowing the deduction.

B.   Commissions and Fees

Petitioner claimed a $1,222 deduction for commissions and fees on his Schedule C.  Petitioner testified that this deduction represented payments made by check to two people who helped him generate deals.  Petitioner, however, testified that he did not have copies of the checks or any other evidence to show whether or when he paid any commissions or fees.  Petitioner's testimony about the commissions and fees he supposedly paid is insufficient for the Court to make an estimate of this expense under the Cohan rule.  See Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390.  We conclude, therefore, that petitioner failed to substantiate the deduction he claimed for commissions and fees, and we sustain respondent's determination disallowing the deduction.

C.   Contract Labor

Petitioner claimed a $4,534 deduction for contract labor on his Schedule C.  Petitioner testified that this deduction probably represented payments to people he paid by the hour.  He testified that he would have paid those people from the Eglobal Call Solutions account that he had set up with U.S. Bank. Petitioner did not have those bank statements because he claimed that the bank statements were seized by Vietnamese authorities in

the 2005 raid on his office. Even if we accept as credible petitioner's testimony regarding the raid in Vietnam, we are not convinced that all relevant business records were in Vietnam or were seized in the raid. Moreover, we gave petitioner an opportunity after trial to obtain duplicate bank records from U.S. Bank, but he did not do so. We conclude therefore that petitioner failed to substantiate that he paid any contract labor expenses during 2004, and we sustain respondent's determination disallowing the deduction.

   D.   Employee Benefit Programs

Petitioner claimed a $4,532 deduction for employee benefits on his Schedule C. Petitioner testified that this expense included cash payments to the Vietnamese Government for health insurance. However, petitioner did not present any credible evidence to prove the nature, amount, and purpose of the health insurance he allegedly paid in 2004. Consequently, we conclude that petitioner failed to substantiate the deduction he claimed for employee benefits, and we sustain respondent's determination.

   E.   Insurance

Petitioner claimed a $12,389 deduction for insurance on his Schedule C. Petitioner testified that the insurance expense mostly represented insurance that he paid on his automobile in Vietnam. However, petitioner did not introduce any documentation or other credible evidence to prove that he paid insurance or

that he even had an insurable interest in a vehicle in Vietnam. Consequently, we conclude that petitioner has failed to substantiate the deduction he claimed for an insurance expense, and we sustain respondent's determination.

F.   Legal and Professional Services

Petitioner claimed a $1,459 deduction for legal and professional services on his Schedule C.  In support of this deduction, petitioner introduced into evidence an invoice dated February 26, 2004, from Sedgwick Detert, Moran & Arnold LLP and Affiliated Entities for professional services through January 31, 2004.  Petitioner testified the invoice related to expenses incurred in establishing the organization and dissolving his relationship with Five-by-Five Networks.  However, petitioner did not introduce any evidence substantiating that he paid the invoice in 2004 or showing that the professional services related to Eglobal Call Solutions.  Consequently, we conclude that petitioner has failed to substantiate the deduction he claimed for legal and professional services, and we sustain respondent's determination.

G.   Office Expenses

Petitioner claimed an $8,123 deduction for office expenses on his Schedule C.  Petitioner testified that the office expenses included payments for utilities in both his Vietnam and U.S. offices.  Petitioner also testified that he made the payments

from either his personal checking account or the account established under the name Eglobal Call Solutions, but petitioner could not produce any canceled checks, bank statements, or other payment records. As we have already stated several times, petitioner was given an opportunity to obtain his bank statements after trial and present them to respondent and the Court, but petitioner did not do so.

Petitioner also introduced into evidence various receipts, such as receipts from Staples, Radioshack, CompUSA, Fry's Electronics, and the U.S. Postal Service, that may have been included in office expenses. However, because we have no way of determining whether those receipts represented business or personal expenses, we cannot conclude that those receipts substantiate petitioner's office expense deduction.[18]

We conclude that petitioner has failed to substantiate his deduction for office expenses, and we sustain respondent's determination.

H.    Rent or Lease for Other Business Property

Petitioner claimed an $88,045 deduction for rent or lease for other business property. Petitioner testified that the property in question included land in Vietnam on which petitioner

---

[18]Several of the receipts showed purchases of items that were personal and not related to Eglobal Call Solutions. For example, one receipt from Fry's Electronics included a purchase of a Euro Pro Shark Professional Iron, and another included a purchase of a DVD entitled "Matrix Revolutions".

constructed a building.  Petitioner testified that in 2004 he paid about $90,000 to Quang Trung Software City Development Co. for the lease.  In support of his testimony, petitioner introduced into evidence an unsigned copy of a lease that showed Eglobal Vietnam as the lessor.  Petitioner testified that although the lease showed Eglobal Vietnam as the lessor, petitioner paid the rent.  Petitioner claimed that he had bank statements that would prove those payments, but he did not introduce any documentation at trial to substantiate the lease payments he allegedly made.  Although we gave petitioner a posttrial opportunity to produce the documentation he claimed he had, petitioner did not do so.

We conclude that petitioner has failed to substantiate the deduction for rent or lease expenses for other business property, and we sustain respondent's determination.

I.   Supplies

Petitioner claimed a $2,333 deduction for supplies. Petitioner testified that he deducted amounts spent for generic office supplies used in his Vietnam and U.S. offices.  Although petitioner introduced into evidence various receipts, we cannot determine from a review of those receipts whether they reflect business or personal purchases.  Because petitioner did not introduce any evidence that would allow us to estimate the supplies petitioner purchased for Eglobal Call Solutions, we will

not apply the <u>Cohan</u> rule. See <u>Norgaard v. Commissioner</u>, 939 F.2d at 879.

We conclude that petitioner has failed to substantiate the deduction for supplies, and we sustain respondent's determination.

J.   <u>Taxes and Licenses</u>

Petitioner claimed a $3,123 deduction for taxes and licenses on his Schedule C. Petitioner testified that the taxes and licenses expense included a license fee that he paid to the Vietnamese Government. However, because petitioner introduced no evidence that he actually paid any license fee in 2004 or that a license fee was required, the <u>Cohan</u> rule is not applicable here. Consequently, we conclude that petitioner has failed to substantiate his deduction for taxes and licenses, and we sustain respondent's determination.

K.   <u>Travel</u>

Petitioner claimed a $6,123 deduction for travel. Petitioner testified that the travel expense related primarily to his Vietnam trips and that he also attended a call center conference in Orlando, Florida.

Petitioner introduced into evidence two credit card statements showing purchases from China Air that he credibly testified were for airplane tickets to Vietnam. However, the first credit card statement shows a China Air purchase on

December 13, 2003, and the second shows two China Air purchases on February 2 and February 6, 2004, of $876.50 each. The China Air purchases occurred before the Vietnam call center became operational in approximately September 2004. At best, these travel expenses are nondeductible startup expenditures under section 195. See supra pp. 17-19.

Petitioner also introduced in evidence a rental car receipt from Orlando, Florida, where he supposedly attended a call center conference. Petitioner did not present corroborating evidence regarding the conference, nor did he show that the car rental was for business purposes. Consequently, we conclude that petitioner failed to prove that he is entitled to deduct the rental car expense. See sec. 274(d).

Petitioner also introduced into evidence numerous receipts for gasoline purchases. Because petitioner did not produce any mileage or travel logs to substantiate that the gasoline purchases related to his activities in Eglobal Call Solutions, we conclude that he has failed to prove that the gasoline purchases reflected on the receipts are deductible. See id. We sustain respondent's determination.

L.   Meals and Entertainment

Petitioner claimed a $6,745 deduction for meals and entertainment expenses. Petitioner introduced into evidence restaurant receipts that he claims were for various meetings.

Although petitioner provided some testimony regarding the meal receipts, petitioner introduced no documentation to show with whom he met during these so-called meetings or whether the meetings were related to his business activities. Petitioner has not substantiated by adequate records or by sufficient evidence corroborating his own statement the business purpose of the expenses as required under section 274(d). Consequently, we conclude that petitioner has failed to substantiate the deduction for meals and entertainment expenses, and we sustain respondent's determination.

### M. Utilities

Petitioner claimed a $13,455 deduction for utilities. Petitioner testified that the utilities expenses primarily represented the electricity cost in Vietnam.[19] Because petitioner did not provide any credible evidence that he paid electricity bills in Vietnam, we conclude that petitioner has failed to substantiate the deduction for utilities. We sustain respondent's determination.

### N. Wages

Petitioner claimed a $96,050 deduction for wages. Petitioner testified that all wages were paid in cash to employees in Vietnam. Petitioner also testified that the records

---

[19]Petitioner testified that the utility costs for his U.S. activities were de minimis in comparison to his utility costs in Vietnam.

of the wages paid to employees were included in the Quickbooks accounting records seized by Vietnamese authorities. Petitioner did not introduce any other evidence to prove that he paid wages to employees in Vietnam. Petitioner did not testify as to how many employees he had or the amounts of their wages, and he made no effort to document this deduction by obtaining duplicate bank records. We conclude therefore that petitioner has failed to substantiate the deduction for wages, and we sustain respondent's determination.[20]

### O.   Other Documents and Receipts

Petitioner introduced in evidence additional documents and receipts to substantiate his expenses claimed on the Schedule C. To the extent we did not specifically address the documents or receipts in this opinion, we conclude that the documents or receipts do not substantiate that petitioner was entitled to a business expense deduction for Eglobal Call Solutions.

### V.   Section 72(t) Additional Tax

Section 72(t)(1) imposes an additional tax of 10 percent on the portion of a distribution from a qualified retirement plan that is includable in gross income, unless the distribution falls under one of the exceptions in section 72(t)(2). Under certain

---

[20]In his testimony petitioner made several references to a minimum monthly payment of $15,000 to Eglobal Vietnam for various expenses including wages associated with the Vietnam call center. Petitioner has failed to substantiate he made monthly payments as alleged.

circumstances, the section 72(t) additional tax does not apply to distributions made to cover the costs of medical care or of higher education expenses.  Sec. 72(t)(2)(B), (E).

Section 72(t)(2)(B) provides an exception to the section 72(t) additional tax for distributions made to the employee to the extent such distributions do not exceed the amount allowable as a deduction under section 213 to the employee for amounts paid during the taxable year for medical care.  We have already found that petitioner is not entitled to a deduction for medical expenses claimed on his Schedule A under section 213 because petitioner could not substantiate that he paid any medical expenses in 2004.  Thus, petitioner is not eligible for the section 72(t)(2)(B) exception to the additional tax because his distribution exceeds the amount allowable as a deduction under section 213.

Section 72(t)(2)(E) provides an exception to the section 72(t) additional tax for distributions from individual retirement plans used for qualified higher education expenses of the taxpayer for the taxable year.  This exception applies to qualified higher education expenses the taxpayer paid for the taxpayer's children.  Sec. 72(t)(7)(A)(iii).  Qualified higher education expenses generally include expenses for tuition, fees, books, supplies, and equipment required for the enrollment or

attendance at an eligible educational institution.  Secs. 72(t)(7)(A), 529(e)(3).

Petitioner contends that he paid expenses related to his children's college education and therefore he is entitled to the section 72(t) exception for at least part of his distributions. However, petitioner did not introduce any evidence other than his uncorroborated testimony regarding any higher education payments he allegedly made on behalf of his two children.  Without some documentation to support petitioner's general testimony, we cannot conclude that petitioner used the distribution to pay college education expenses or that the expenses, even if paid, are qualified higher education expenses within the meaning of section 529(e)(3).  See sec. 72(t)(7)(A).[21]

Because petitioner failed to prove that he qualifies for any exception under section 72(t)(2), we sustain respondent's

_____

[21]Even if petitioner were able to substantiate that he used the distribution from his qualified retirement plan to pay his children's qualified higher education expenses, he would likely not qualify for the sec. 72(t)(2)(E) exception because his distribution apparently was not a distribution from an individual retirement plan.  See, e.g., Uscinski v. Commissioner, T.C. Memo. 2005-124; see also H. Rept. 105-148, at 288-289 (1997), 1997-4 C.B. (Vol. 1) 319, 610-611.  The Internal Revenue Code defines "individual retirement plan" as an individual retirement account or annuity described in sec. 408(a) and (b).  Sec. 7701(a)(37). Petitioner attached to his 2004 return two Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., which show that petitioner's distribution was not a distribution from an individual retirement account or annuity.  Moreover, on his 2004 return petitioner did not report receiving any distribution from an individual retirement account or annuity.

determination that petitioner is liable for the section 72(t) additional tax on the distribution from his qualified retirement plan.

## VI.  Section 6662(a) Accuracy-Related Penalty

Respondent contends that petitioner is liable for the accuracy-related penalty under section 6662 on the ground that there was a substantial understatement of income tax in 2004. Section 6662(a) and (b)(2) authorizes the Commissioner to impose a 20-percent penalty if there is a substantial understatement of income tax.  A substantial understatement of income tax with respect to an individual taxpayer exists if, for any taxable year, the amount of the understatement for the taxable year exceeds 10 percent of the tax required to be shown on the return for the taxable year or $5,000, whichever is greater.  Sec. 6662(d)(1)(A).

Respondent bears the initial burden of production with respect to petitioner's liability for the section 6662 penalty, in that respondent must first produce sufficient evidence to establish that the imposition of the section 6662 penalty is appropriate.  Sec. 7491(c).  If respondent satisfies his initial burden of production, the burden of producing evidence to refute respondent's evidence and to establish that petitioner is not liable for the section 6662 penalty shifts to petitioner.  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Respondent has carried his burden of production by showing that petitioner substantially understated his 2004 Federal income tax. Because respondent has met his burden of production, petitioner must come forth with sufficient evidence to persuade the Court that respondent's determination is incorrect. See <u>id.</u> at 446-447. Petitioner also bears the burden of producing evidence to demonstrate reasonable cause under section 6664(c)(1). See <u>id.</u>

Petitioner has not introduced any credible evidence that respondent's accuracy-related penalty determination is incorrect or that petitioner had reasonable cause for the substantial understatement of his 2004 income tax. Therefore, we sustain respondent's determination that petitioner is liable for the section 6662(a) accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.