T.C. Summary Opinion 2012-16


UNITED STATES TAX COURT


THELMA L. MOORE AND WILLIE J. MOORE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19504-09S.                    Filed February 28, 2012.


Thelma L. Moore and Willie J. Moore, pro sese.

<u>Adam P. Sweet</u> and <u>Randall G. Durfee</u>, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated May 14, 2009, respondent:  (1) determined an $18,472[2] deficiency in petitioners' 2003 Federal income tax; (2) imposed a $3,611 section 6651(a)(1) addition to tax; and (3) imposed a $3,694 section 6662(a) accuracy-related penalty.

The issues remaining for decision are:  (1) whether petitioners are entitled to trade or business expense deductions in excess of the amounts allowed by respondent; (2) whether petitioners are liable for a section 6651(a)(1) addition to tax; and (3) whether petitioners are liable for a section 6662(a) accuracy-related penalty.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]All amounts are rounded to the nearest dollar.

## Background

Some of the facts have been stipulated and are so found. Petitioners are, and were at all times relevant here, married to each other. They resided in Texas when the petition was filed.

During 2003 Willie J. Moore (petitioner) was employed as a system support analyst for the City of Houston, Texas. His normal work hours were 8 a.m. to 5 p.m., Monday through Friday of each week. In addition to his employment with the City of Houston, petitioner was self-employed as a real estate broker and a mortgage broker. The real estate brokerage business and the mortgage brokerage business operated from two offices, one in La Marque, Texas (La Marque office), and the other in Houston, Texas (Houston office). As of the close of 2003, petitioner was in the process of opening a used car dealership.

At all times relevant here, petitioners owned a Buick, a Hyundai, and a Cadillac. According to petitioners, the Buick and the Hyundai were used for business purposes by petitioner and Mrs. Moore, respectively. Petitioners maintained two mileage logs--one for the Buick (petitioner's mileage log), and one

for the Hyundai (Mrs. Moore's mileage log). Each mileage log consists of 12 pages, that is, one page for each month of the year. Each page contains an entry or entries for each day of the month. Typically, entries in the mileage logs include: (1) odometer readings; (2) miles driven (sometimes designated as "commuting" and sometimes as "business"); (3) destinations; and (4) the purpose for the trip.

According to petitioner's mileage log, he typically drove more than 100 miles per day (and sometimes more than 200 miles per day) for business purposes. According to petitioner, he routinely drove from his house first to the La Marque office, then to one of the offices in Houston, then to the other Houston office, then back to the La Marque office, and then back to his house. This sequence, shown as "LM-Hou-Hou-LM" in petitioner's mileage log, appears as an entry on virtually every day of the year. The "business purpose" entries are stated in generalized terms, such as "OPEN - Review Task Log - Close Office" or "OPEN - Review Contract - Close", or "Open - Update Website - Close".

On Mrs. Moore's mileage log the entries for business miles driven average approximately 100 miles per day, usually from La Marque to a surrounding town, often Houston or Galveston.

Petitioners' untimely 2003 joint Federal income tax return includes three Schedules C, Profit or Loss From Business. Petitioners did not elect to itemize deductions in computing the taxable income shown on that return.

One Schedule C relates to petitioner's real estate brokerage business. This Schedule C shows the name of the business as "United Realty" and lists petitioner as the proprietor (Realty Schedule C). The following items are reported on the Realty Schedule C:

|  | Amount |
|---|---|
| Income: | |
| Gross receipts or sales | $24,360 |
| Expenses: | |
| Advertising | 683 |
| Car and truck expenses | 16,992 |
| Commissions and fees | 61 |
| Insurance | 220 |
| Interest (mortgage) | 10,907 |
| Legal and professional services | 21,864 |
| Rent or lease of vehicle, machinery, and equipment | 4,808 |
| Supplies | 165 |
| Utilities | 1,618 |
| Other expenses[1] | 3,733 |
| Net loss | [2](36,630) |

[1]The Realty Schedule C reported other expenses of $3,733 composed of $1,305 for donations and $2,428 for telephone expenses.

[2]Due to a mathematical error, petitioners reported a net loss of $36,630 instead of the correct net loss of $36,691.

Another Schedule C relates to what petitioner described as his used car dealership. That Schedule C shows the name of the business as "United Auto Sales" and lists petitioner as the proprietor (Auto Schedule C). The following items are reported on the Auto Schedule C:

|  | Amount |
|---|---|
| Income: | |
| Gross receipts or sales | -0- |
| Expenses: | |
| Car and truck expenses | $1,000 |
| Commissions and fees | 1,882 |
| Insurance | 326 |
| Interest (mortgage) | 6,112 |
| Legal and professional services | 6,202 |
| Rent or lease of vehicles, machinery, and equipment | 8,465 |
| Supplies | 3,401 |
| Taxes and licenses | 96 |
| Utilities | 7,958 |
| Net loss | (35,442) |

The third Schedule C relates to the mortgage brokerage business. That Schedule C shows the name of the business as "United Home Mortgage" and lists Mrs. Moore as the proprietor (Home Schedule C). The following items are reported on the Home Schedule C:

|  | Amount |
|---|---|
| Income: | |
| Gross receipts or sales | $16,921 |
| Expenses: | |
| Advertising | 956 |
| Car and truck expenses | 14,832 |
| Legal and professional services | 2,447 |
| Office expense | 852 |
| Rent or lease of vehicles, machinery, and equipment | 3,363 |
| Other expenses[1] | 6,498 |
| Net Loss | (12,027) |

[1]These other expenses consist of $2,123 for telephone expenses, $1,508 for commission expenses, $1,049 for advantage credit, $56 for postage, $677 for miscellaneous expenses, and $1,085 for dues.

The deduction for car and truck expenses claimed on each Schedule C is computed by applying the standard mileage rate to the mileage shown to be driven for business purposes. The net losses shown on the Schedules C total $84,098,

which completely offsets the $51,296 of income (mostly attributable to petitioner's wages from the City of Houston) reported on the return.

In the above-referenced notice of deficiency, respondent disallowed all of the deductions claimed on the Schedules C. According to the notice of deficiency, petitioners failed to substantiate those deductions. After reviewing certain substantiating records presented to respondent for the first time in connection with the trial of this case, respondent now agrees that petitioners are entitled to some of the deductions disallowed in the notice of deficiency.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per

---

[3]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. In general, an expense is "ordinary" if it is considered normal, usual, or customary in the context of the particular business out of which it arose, see Deputy v. du Pont, 308 U.S. 488, 495 (1940), and the expense is "necessary" if it is appropriate and helpful to the operation of the taxpayer's trade or business, see Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), aff'd, 777 F.2d 662 (11th Cir. 1985). If deductible under section 162(a) or otherwise, expenses described in section 274(d), namely, travel, entertainment, gift, and "listed property" expenses, may not be deducted unless the strict substantiation requirements of that section are satisfied. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). "Listed property" includes any passenger automobile. Sec. 280F(d)(4)(A)(i).

I. Disallowed Deductions

Keeping these fundamental principles of Federal income taxation in mind, we turn our attention to each Schedule C. According to petitioners, all of the deductions claimed on any of the Schedules C relate to expenses incurred in one or the other of their trades or businesses.

A. Deductions Claimed on the Realty Schedule C and the Home Schedule C

According to petitioners, they are entitled to deductions for expenses incurred in the operation of United Realty and United Home Mortgage as shown on the Schedule C for each of those businesses. In support of their position, they submitted copies of canceled checks and the above-referenced mileage logs to substantiate their business expenses.

1. Expenses Other Than Car and Truck Expenses, and Charitable Contributions

The Schedules C show various deductions for advertising expenses; commissions and fees; insurance; interest (mortgage); legal and professional services; office expenses; rent or lease of vehicles, machinery, and equipment; supplies; utilities; and other expenses. With the exception of (1) expenditures that

are clearly personal,[4] or (2) contributions to charities,[5] to the extent that a canceled check substantiates one of the above-listed expenses, respondent has conceded that petitioners are entitled to a section 162 deduction for that expense. Petitioners have failed to establish that they are entitled to deductions in excess of the amounts now conceded by respondent. Other than their own self-serving testimonies, which we find unpersuasive, see Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), petitioners have provided no other evidence, e.g., canceled checks, receipts, lease agreements, or mortgage interest statements, to substantiate their deductions relating to these items. Consequently, petitioners are not entitled to deductions for these expenses in excess of the amounts now conceded by respondent.

2. Charitable Contributions

On the Realty Schedule C petitioners claimed a $1,305 deduction for charitable contributions. The canceled checks submitted by petitioners show that they contributed $650 to various qualifying organizations. According to petitioners, they are entitled to deduct the contributions as claimed (or at least as

---

[4]Sec. 262(a) provides generally that no deduction is allowed for personal, living, or family expenses.

[5]In general, a contribution to a qualifying organization may be deducted as an itemized deduction. See secs. 62, 170(a).

substantiated) as business expenses. According to respondent, the contributions, if allowable as a deduction, must be deducted as an itemized deduction.

A contribution to a qualifying organization is not deductible under section 162 as a business expense unless it serves some legitimate business purpose. <u>Gage v. Commissioner</u>, T.C. Memo. 2002-72; sec. 1.162-15(a), Income Tax Regs.

According to petitioner, the charitable contributions were deducted as business expenses because charitable contributions are "required as a realtor to be visible within the community." Petitioner's general explanation, however, fails to justify deducting the contributions made to a church, a cancer society and the American Red Cross as business expenses. <u>See</u> <u>Hartless Linen Serv. Co. v. Commissioner</u>, 32 T.C. 1026, 1029-31 (1959). Respondent's disallowance of the deduction for charitable contributions claimed on the Realty Schedule C is sustained.[6]

### 3. Car and Truck Expenses

Petitioners' claimed deductions for car and truck expenses of $16,992 and $14,832 on their Realty and Home Schedules C, respectively. They rely primarily

---

[6]Petitioners did not elect to itemize deductions on their 2003 return, and there is no suggestion that the allowance of the substantiated charitable contributions, in combination with other allowable itemized deductions, would exceed the standard deduction.

on the mileage logs to substantiate these deductions. Those mileage logs, however, contain far too many errors, irregularities, and questionable entries to be considered reliable.[7] That being so, we do not treat the mileage logs as "adequate records" within the meaning of section 274(d) and the regulations thereunder. See Tokarski v. Commissioner, 87 T.C. at 77. Accordingly, respondent's disallowances of the deductions for car and truck expenses claimed on the Realty Schedule C and the Home Schedule C are sustained.[8]

B. Deductions Claimed on the Auto Schedule C

According to petitioners, they are entitled to the deductions claimed on the Auto Schedule C because those deductions represent expenses paid or incurred in the operation of petitioner's used car business. See sec. 162(a).

A taxpayer has not "'engaged in carrying on any trade or business' within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was

---

[7]At trial petitioner admitted that the logs contained errors but described the logs as "pretty accurate".

[8]Because these deductions are for expenses described in sec. 274, we may not in the absence of adequate substantiating records allow any deductions based upon estimates of those expenses even though it appears that petitioners would be entitled to some deduction for mileage driven in connection with one or the other of their Schedule C businesses. See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969) .

organized." <u>Richmond Television Corp. v. United States</u>, 345 F.2d 901, 907 (4th Cir. 1965), <u>vacated and remanded on other grounds</u>, 382 U.S. 68 (1965). Furthermore, section 195(a) generally provides that no deduction is allowed for startup expenditures. <u>See also</u> <u>Hardy v. Commissioner</u>, 93 T.C. 684 (1989), <u>aff'd in part and remanded in part per order</u>, (10th Cir. Oct. 29, 1990).

At trial petitioner explained that he was in the process of establishing a business and that it was still in its startup phase as of the end of 2003. His testimony on the point, amplified by a review of the Auto Schedule C on which no gross receipts are reported, demonstrates that petitioner was not engaged in a trade or business of selling used automobiles as of the close of 2003. It follows that petitioners are not entitled to the deductions shown on the Auto Schedule C, and respondent's disallowances of those deductions are sustained.

II. Section 6651(a)(1) Addition to Tax for Failure To File

Section 6651(a)(1) imposes an addition to tax for failure to file a return by its due date. The addition equals 5% of the amount required to be shown as tax on the return for each month or fraction thereof that the return is late, not to exceed 25%. <u>Id.</u> The burden of production with respect to the imposition of a section 6651(a)(1) addition to tax rests with respondent.

In the absence of an extension, the last date for petitioners to have timely filed their Federal income tax return for 2003 was Friday, April 15, 2004. See sec. 6072(a). There is no dispute that petitioners' 2003 Federal income tax return was not received by respondent and filed until December 31, 2007, more than 3-1/2 years after its due date.

"A failure to file a tax return on the date prescribed leads to a mandatory penalty unless the taxpayer shows that such failure was due to reasonable cause and not due to willful neglect." McMahan v. Commissioner, 114 F.3d 366, 368 (2d Cir. 1997), aff'g T.C. Memo. 1995-547. A showing of reasonable cause requires a taxpayer to show that the taxpayer exercised "ordinary business care and prudence" but was nevertheless unable to file the return within the prescribed time. United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners have not offered any evidence to establish that the late filing of their 2003 return was due to reasonable cause and not due to willful neglect. Respondent's burden of production, which has been met, does not require that respondent establish the absence of reasonable cause. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001). Accordingly, petitioners are liable for a section 6651(a)(1) addition to tax.

III.  Section 6662 Accuracy-Related Penalty

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty.  That section imposes an accuracy-related penalty equal to 20% of the underpayment of tax that is attributable to negligence or other specified grounds.  A taxpayer's failure to keep adequate records to substantiate claimed deductions can support the imposition of the section 6662(a) accuracy-related penalty on the ground of negligence.  Sec. 1.6662-3(b)(1), Income Tax Regs.  As with the addition to tax under section 6651(a)(1), the burden of production with respect to the imposition of the section 6662(a) penalty rests with the Commissioner.  Sec. 7491(c).

Petitioners failed to maintain adequate substantiating records for many of the deductions claimed on their 2003 return.  According to respondent, that failure justifies the imposition of a section 6662(a) accuracy-related penalty upon the ground of negligence.  We agree.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown that the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Petitioners bear the burden

of proving that they had reasonable cause and acted in good faith with respect to the underpayment.  See Higbee v. Commissioner, 116 T.C. at 449.  This they have failed to do.  Respondent's imposition of the section 6662(a) accuracy-related penalty is sustained.

To reflect the foregoing,

Decision will be entered

under Rule 155.